UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | : | **CASE NO. 08-29769(PGH)** |
| GINN-LA ST. LUCIE LTD., LLLP, *et al.,* | : | All Cases Jointly Administered |
| | : | |
| Debtors. | : | Chapter 7 |
| ———————————————————— | : | |
| In re: | : | (4 Cases Substantively Consolidated Under Lead Case No. 08-29769-PGH) |
| GINN-LA QUAIL WEST., LTD, LLLP, *et al.,* | : | |
| | : | (3 Cases Substantively Consolidated Under Lead Case No. 08-29774-PGH) |
| Debtors. | : | |
| ———————————————————— | : | |
| DREW M. DILLWORTH, Chapter 7 Trustee, | : | |
| | : | **ADV. PRO. NO. 10-03807** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| EDWARD R. GINN III, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| ———————————————————— | : | |

**THE LUBERT-ADLER DEFENDANTS' MOTION, INCLUDING MEMORANDUM
OF LAW, PURSUANT TO RULE 7012(b)(6) OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE TO DISMISS THE TRUSTEE'S COMPLAINT FOR
AVOIDANCE AND RECOVERY OF FRAUDULENT/PREFERENTIAL TRANSFERS**

Defendants Ira M. Lubert, Dean S. Adler, Lubert-Adler Management Co., L.P., Lubert-Adler Group IV, L.P., Lubert-Adler Real Estate Fund IV, L.P.; Lubert-Adler Real Estate Parallel Fund IV, L.P.; and Lubert-Adler Capital Real Estate Fund IV, L.P. (collectively, the "Lubert-Adler Defendants"),[1] by undersigned counsel, respectfully move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") made applicable in this adversary proceeding

---

[1] The other defendants are Edward R. Ginn, II, Edward R. Ginn III Revocable Trust dated September 14, 2002, ERG Management, LLC, ERG Enterprises, L.P. (collectively the "Ginn Defendants").

3475774-1

by Rule 7012 of the Federal Rules of Bankruptcy Procedure for an order dismissing the Trustee's *Complaint For Avoidance and Recovery of Fraudulent/Preferential Transfers* (the "<u>Complaint</u>").

The Lubert-Adler Defendants seek dismissal of the Complaint because the Trustee has failed to allege facts that, if proven, would establish a right of recovery against the Lubert-Adler Defendants under 11 U.S.C. §550(a)(1): (1) there is no allegation that the Lubert-Adler Defendants were transferees (initial, immediate or mediate) of any of the payments at issue; and (2) based on the facts alleged, the Trustee's proposed sweeping "status based" application of "the entity for whose benefit" language contained in 11 U.S.C. § 550(a)(1) to the Lubert-Adler Defendants fails as a matter of law.  The Trustee has failed to allege that the Lubert-Adler Defendants received any "quantifiable benefit or one bearing the necessary correspondence to the value of the property transferred or received."  *Reily v. Kapila* (*Int'l Mgmt. Assoc.),* 399 F.3d 1288, 1293 (11th Cir. 2005) (citing *Mack v. Newton,* 737 F.2d 1343, 1359-60 (5th Cir. 1984)).

Based on these fundamental deficiencies, this Court should dismiss the Complaint in its entirety.

## I.     <u>INTRODUCTION</u>

### A.     **The Avoidance Allegations**

In 2006, Ginn-LA Conduit Lender, LLC ("<u>Conduit Lender</u>") and Ginn-LA CS Borrower, LLC entered into a loan transaction with Credit Suisse.  The loan was guaranteed by the Debtors and other entities that were developing projects in three other diverse locations (the "<u>Other Project Entities</u>") and was cross collateralized by the assets of the Debtors and the Other Project Entities.  One of the Other Project Entities was Ginn-LA West End Ltd, LLLP which was developing a project in Grand Bahama Island (the "<u>Ginn Sur Mer Development</u>").  (Compl. ¶¶ 2, 5, 6).

In this case (via Counts I-III of the Complaint), the Trustee seeks to avoid, pursuant to 11 U.S.C. §§ 547 and 548, two transfers made by the Debtors in May, 2008 to Conduit Lender. Specifically, the Trustee seeks to avoid: (a) a transfer in the amount of $17,509,699.21 made on May 6, 2008 by the debtor Ginn-LA Quail West Ltd., LLLP  to Conduit Lender (the "Quail West Payment"); and (b) a transfer in the amount of $31,947,006.46 made on May 7, 2008 by the debtor Ginn-LA St. Lucie Ltd., LLLP to Conduit Lender (the "Tesoro Payment") (Compl. ¶ 4). The Quail West Payment and the Tesoro Payment are hereinafter collectively referred to as the "Payments."

In his Complaint, the Trustee alleges that the Payments related to "debts" that appeared on the Debtors' books and records. (Compl., ¶ 7).  The allegations of the Complaint are contradictory as to whom the "debt" was owed.  At first, the Trustee pleads that the debts were owing to Conduit Lender.  In that regard, the Trustee alleges, "Here, the Lead Debtors' purported 'debts' to Ginn-LA Conduit Lender resulted from a lack of Tesoro and Quail West lot and units sales compared to Ginn sur Mer lot and unit sales..." (Compl., ¶9).  Later, the Trustee pleads that the debts were owing to the Ginn sur Mer Development.  In that regard, the Trustee alleges that the Tesoro Payment and the Quail West Payment were "made to 'satisfy' a phantom 'intercompany debt' 'owed' the Ginn sur Mer Development..." (Compl., ¶¶ 26 and 32).

In any event, the Trustee goes on to allege that the "debt" that appeared on the Debtors' books relating to the use of monies generated by lot sales from the Ginn Sur Mer Development was "*notional* rather than real debt" and, therefore, the Debtors received no "value" for their repayment of those loans via the Payments to Conduit Lender.  (Compl., ¶¶ 10, 26, 28, 32 and 34).[2]

---

[2] The Trustee also alleges that Tesoro and Quail West were insolvent and/or undercapitalized at the time of the transfers (Compl. ¶¶ 35, 38(d), 43, 47, 57 and 61).

B.     The "For Whose Benefit"/Recovery Allegations

In Counts IV and VIII of the Complaint, the Trustee seeks to recover from the Lubert-Adler Defendants the amount of the Payments.  Notably, the Trustee does not allege that any of the Lubert Adler Defendants ever received any portion of the Payments and, accordingly, does not seek recovery against them as transferees.  Instead, the Trustee seeks recovery against the Lubert-Adler Defendants to the extent that they held equity in the entity that was developing the Ginn sur Mer Development.   In that regard, the Trustee simply alleges that: (a) with respect to the Tesoro Payment and the Quail West Payment, "each of the Defendants in this case was an entity for whose benefit a transfer was made within the meaning of 11 U.S.C. § 550 (a)(1)." (Compl., ¶¶ 50, 64); and (b) the Payments "are recoverable from the persons and entities for whose benefit they were made, namely the equity owners of the Ginn Sur Mer Development." (Compl., ¶ 13).

The Trustee does not allege what "benefit" the owners of the Ginn Sur Mer Development received from the Payments to the initial transferee, Conduit Lender.  Specifically, the Trustee makes no allegation that, by virtue of the Payments to the initial transferee, the Lubert-Adler Defendants (or any of them) received any quantifiable benefit or any benefit that corresponded to the amount of the Payments.

Moreover, as to some of the Lubert-Adler Defendants, the Trustee does not even allege that they were "equity owners of the Ginn Sur Mer Development."  The only defendants that the Trustee pleads held equity interests in the Ginn Sur Mer Development were – ERG Enterprises, Inc, with a 20% interest (Compl. ¶ 20); and Lubert-Adler Real Estate Fund IV, L.P.; Lubert-Adler Real Estate Parallel Fund IV, L.P.; and Lubert-Adler Capital Real Estate Fund IV, L.P. (collectively, the "Fund IV Partnerships") with a collective 80% interest (Compl., ¶ 22).  In other words, there are no allegations that defendants Dean Adler, Ira Lubert, Lubert-Adler

Management Co., L.P. or Lubert-Adler Group IV, L.P. were equity owners of the Ginn Sur Mer Development.  As to these defendants, the Trustee merely alleges that: Ira Lubert and Dean Adler were "involved in the financing and development of the two Debtor projects" and "co-founded and co-own Lubert-Adler Management Co., L.P...and the affiliated Lubert-Adler "Group" entities (Compl., ¶¶ 1 and 21);[3] and Lubert-Adler Group IV, L.P. is the general partner of the Fund IV Partnerships (Compl., ¶ 22).

In short, the Trustee asserts a right to recovery against the Lubert-Adler Defendants due solely to the fact that some of them held an equity interest in the Ginn Sur Mer Development.

## II.    THE MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6), made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, is the proper means for challenging the Complaint's legal sufficiency.  The Rule 12(b)(6) standard was refined in two United States Supreme Court decisions, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S.__, 129 S. Ct. 1937 (2009).  *Twombly* and *Iqbal* require, among other things, a two-part analysis of the complaint under Rule 12(b)(6): first, all legal conclusions and formulaic recitations of claims must be stripped away and discarded; and, second, the remaining factual averments must be examined to determine if they are sufficient to plausibly state the claim. *See also Mukamal v. Bakes*, 378 Fed. Appx. 890, 896 (11th Cir. Apr. 30, 2010).

## III.    ARGUMENT

To the extent the Trustee can succeed on his Counts I-III avoidance claims, he must then establish that he is entitled to a recovery under 11 U.S.C. § 550(a).  This section, however, prescribes that only certain parties can be held liable for avoided transfers, as follows:

---

[3] The term "Group" is not defined.
3475774-1                                    5

> **(a)** … to the extent that a transfer is avoided under section … 547, 548…… the trustee may recover…from---
>
> **(1)** the initial transferee of such transfer or *the entity for whose benefit such transfer was made*; or
>
> **(2)** any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (italics added).

In this case, the Trustee seeks recovery under section 550(a)(1), claiming that the Lubert-Adler Defendants were entities for whose benefit the challenged transfers were made. For the reasons discussed below, the Trustee has failed to plead a claim under 11 U.S.C. § 550(a).

### A.    <u>The Legal Standard</u>

Section 550(a) distinguishes between "transferees" and an "entity for whose benefit [the initial transfer] was made." The phrase "entity for whose benefit such transfer was made" does "not simply reference the next pair of hands." *Faulkner v. Kornman* (*In re the Heritage Org., LLC),* 413 B.R. 438, 495 (Bankr. N.D. Tex. 2009) (citations omitted). Rather, it references entities that benefit from the initial transfer itself, "without ever holding the funds." *Id.* "The benefit must derive *directly* from the transfer, not from the use to which it is put by the transferee... someone who receives the money later on is not an 'entity for whose benefit such transfer was made.'" *Turner v. Phoenix Fin., LLC* (*In re Imageset, Inc.*), 299 B.R. 709, 718 (Bankr. D. Me. 2003) (quoting *Bonded Fin. Services Inc. v. European Am. Bank (In re Bonded Fin. Services Inc.)*, 838 F.2d 890, 896 (7th Cir. 1988)) (italics added); *see also 3V Capital Master Fund Ltd. v. Official Comm. of Unsecured Creditors of Tousa, Inc. (In re Tousa, Inc.),* No. 10-cv-60016-ASG, slip op. D.E. 31 at 99-100 (S.D. Fla. Feb. 11, 2011). Moreover, an entity for whose benefit the transfer was made must receive a "quantifiable benefit or one bearing the

necessary correspondence to the value of the property transferred or received." *Int'l Mgmt. Assoc.,* 399 F.3d at 1293 (citing *Mack v. Newton,* 737 F.2d at 1359-60).[4]

In *International Management,* the Eleventh Circuit addressed the potential liability under section 550(a)(1) of a non-transferee equity holder and refused to impose section 550(a)(1) liability based on the defendant's ownership status in an entity.  Specifically, the Eleventh Circuit examined a transaction where a debtor entity redeemed shares of a company for less than fair value, leaving only one remaining shareholder.  *Id.* at 1291-92.  Although no property flowed directly to the remaining shareholder, the trustee sought recovery against him, contending that by reason of the redemption, the remaining shareholder obtained 100% control of the assets of the company.  *Id.* at 1292.  The Court held that "this sort of unquantifiable advantage is not the sort of 'benefit' contemplated by 11 U.S.C. §550(a)."  *Id.*  The court went on to state that the fact that the remaining shareholder "attained complete control over the debtors' assets does not give rise to a quantifiable benefit or one bearing the 'necessary correspondence to the value of the property transferred or received.'"  *Id.* (citing *Mack v. Newton,* 737 F.2d at 1359-1360).[5]

In rendering its decision, the Eleventh Circuit emphasized the importance of adhering to the "benefit" language contained in 11 U.S.C. § 550 (a).  The Court distinguished *International Management* from the case of *In re B.S. Livingston & Co., Inc.*, 186 B.R. 841 (Bankr. D.N.J. 1995) in which the court imposed section 550(a) liability on controlling shareholders and principals of the debtor who had sold the core of a business to a third party company in exchange for lucrative positions with that company.  The Eleventh Circuit stated:

> Although Livingston may present a "benefit" that is on the <u>far edge of qualification</u> under 11 U.S.C. § 550(a), <u>there is no obvious</u>

---

[4] "The paradigm case of a benefit under §550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor." *Int'l Mgmt. Assoc.,* 399 F.3d at 1292-93. No such allegation is or could be asserted in this case.

[5] While Mack was decided under the Bankruptcy Act, the Eleventh Circuit found its language appropriate. *Int'l Mgmt. Assoc.,*  399 F.3d at 1293 n.3.

<u>violence to the language</u> in stating that the benefit of a lucrative position, like the benefit experienced by a guarantor, may be considered direct, ascertainable and quantifiable, unlike the "benefit" to [the remaining shareholder here].

*Int'l Mgmt. Assoc.,* 399 F.3d at 1293 (underlining added).

Other courts have also refused to impose section 550(a)(1) liability based on a defendant's ownership status in an entity. For instance, in *Mack v. Newton, supra,* a case cited as positive authority by the Eleventh Circuit, the Fifth Circuit rejected a trustee's allegation that principals in a partnership had received a "benefit" from auctioning off cattle and using the proceeds to operate their dairy enterprise as a going concern. *Mack v. Newton,* 737 F.2d at 1359-60. The Fifth Circuit held that such a benefit was too broad to warrant recovery insofar as it was an "incidental, unquantifiable, and remote benefit bearing no necessary correspondence to the value of the property transferred or received." *Mack v. Newton,* 737 F.2d at 1359-1360.

Similarly, in *Hansen v. 5841 Bldg. Corp., (In re Hansen),* 341 B.R. 638, 645 (Bankr. N.D. Ill. 2006), the bankruptcy court refused to impose section 550(a) liability upon the president/majority shareholder of the transferee companies. The debtor had transferred money to one company, which then transferred the money to a second company, which then used the transferred funds as operating capital. The trustee brought suit against both companies, as well as an individual who was a majority shareholder and president of both companies. The trustee alleged that the individual defendant's shareholder and presidential status was itself sufficient to establish that he had benefitted from the transfers. The court granted summary judgment in favor of the individual defendant. In rendering its decision, the *Hansen* court criticized prior court decisions that had authorized recovery based on one's "mere status as an officer or shareholder

of a corporate transferee,"[6] pointing out that those cases "ignore the fundamental nature of corporations." *Id*. at 645.  In that regard, the *Hansen* court wrote:

> Nothing in section 550(a)(1) indicates that corporate form can be thrust aside and all voidable transfers to a corporation recovered from its shareholders on the mere assumption that shareholders somehow automatically "benefit" from such transfers.  If corporate existence is to be observed, transfers cannot be recovered even from a shareholder who by virtue of his majority ownership ostensibly "controls" the corporation.  Something more than mere status as a shareholder, officer, or director must be shown.

*Id.* at 645 (internal citations omitted).

Likewise, in *In re Imageset, Inc.*, the bankruptcy court refused to impose liability on the defendants based on their status as members of a limited liability company that received transfers from the debtor.  299 B.R. at 718.  The trustee had alleged, *inter alia*, that the defendants' membership status and right to receive distributions from the LLC, in and of itself, made them "entities for whose benefit such transfers were made" under section 550(a)(1).  *Id.* at 718.  The *Imageset* court rejected the trustee's "entities for whose benefit" theory, writing:

> While the logic of Turner's [the chapter 7 trustee] position is conspicuous in its simplicity, it also proves too much.  If your interest in an entity makes you strictly liable (jointly and severally with the entity) under §550 every time the entity receives a fraudulent conveyance, wouldn't the same logic extend to every shareholder of a corporation to the same degree?

*Id. at* 718.

---

[6] The criticized decisions included *Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655, 665-66 (N.D. Ill. 1991); *Nickless v. Golub (In re Worcester Quality Foods, Inc.)*, 152 B.R. 394, 404 (Bankr. D. Mass. 1993) and *Balti v. Lynch (In re McCook),* 319 B.R. 570, 590 (Bankr. N.D. Ill 2005).  We found no cases from the Eleventh Circuit or the District or Bankruptcy Courts of this Circuit that favorably cited these cases. In fact, the Eleventh Circuit, in *Munford v. Valuation Research Corp. (In re Munford, Inc.),* 98 F.3d 604, 610 n.4 (11th Cir. 1996), specifically rejected the *Wieboldt* decision in the context of a case relating to whether an LBO payment could qualify as a settlement payment under section 546(e).

**B.**     <u>**Application Of The Law To The Facts Of This Case**</u>

The language of Bankruptcy Code makes plain that there is a limited universe of entities from whom recovery for an avoidable transfer may be obtained.   Pursuant to 11 U.S.C. § 550(a)(1), recovery may be obtained from an initial transferee and an entity for whose benefit the initial transfer was made.   Pursuant to 11 U.S.C. §550(a)(2), recovery may be obtained from any immediate or mediate transferee.

In this case, the Trustee is seeking to hold the Lubert-Adler Defendants liable under 11 U.S.C. § 550(a)(1), contending that they were entities for whose benefit the initial transfer to Conduit Lender was made.   The Trustee, however, has offered only bald allegations in that regard.   The Trustee cannot state a claim based on his bald assertions that the Payments were made for the benefit of the defendants or for the "equity owners of the Ginn sur Mer Development." [Compl, ¶¶ 13, 50, 64].[7]   It is well settled that conclusory allegations are "not entitled to be assumed true." *Iqbal,* 129 S.Ct. at 1951.

As the case law above demonstrates, the Trustee must allege a benefit that is "quantifiable" or bears a "necessary correspondence to the value of the property transferred or received." *Int'l Mgmt. Assoc.,* 399 F.3d at 1293; *Mack v. Newton,* 737 F.2d at 1359-1360.   The Trustee has not done so.   In *International Management*, the Eleventh Circuit commented that the "lucrative positions" received by the individual defendants in *Livingston* were "on the far edge of qualification under 11 U.S.C. § 550(a)." *Int'l Mgmt. Assoc.,* 399 F.3d at 1293.   Here, the Trustee has identified no benefit, let alone one on the far edge of qualification.   The construct urged by the Trustee gives "violence to the language" of the statute. *Id.*   "For the benefit of" recovery

---

[7] As discussed above, the Trustee does not even allege the defendants Ira M. Lubert, Dean S. Adler, Lubert Adler Management Co., L.P. or Lubert-Adler Group IV, L.P. were equity owners of the Ginn sur Mer Development.

cannot be awarded based on a defendant's equity status alone.  *Id.*, *In re Hansen*, 341 B.R. at 645, *In re Imageset, Inc.*, 299 B.R. at 718.

Even if the Trustee had alleged that Ginn-LA West End Ltd, LLLP (the developer of the Ginn Sur Mer Development) was an immediate or a mediate transferee (which he has not), the Trustee still would not have been able to state a claim against the Lubert-Adler Defendants as "entities for whose benefit" the Payments were made.  This is because section 550(a)(1) does not permit recovery from an entity who derived a benefit from anything other than an initial transfer. 11 U.S.C. §550(a)(1).  *See In re Tousa, Inc.,* No. 10-cv-60016-ASG, slip op. at 99 ("Section 550(a) explicitly links the initial transferee with the entity 'for whose benefit' the initial transfer was made, 'only a person (or entity) who receives a benefit from the initial transfer can be an entity for whose benefit the initial transfer was made.'") (quoting *Bonded Fin. Services Inc.,* 838 F.2d at 896)); *see also In re the Heritage Org., LLC,* 413 B.R. at 495.

## IV.  CONCLUSION

For all the reasons set forth above, the Complaint should be dismissed.

Dated: February 14, 2011                                    Respectfully submitted,

                                                             BERGER SINGERMAN, P.A.
Counsel to Ira M. Lubert, Dean S. Adler
Lubert-Adler Management Co., L.P.,
Lubert-Adler Group IV, L.P., Lubert-Adler
Real Estate Fund IV, L.P., Lubert-Adler
Real Estate Parallel Fund IV, L.P., Lubert-
Adler Capital Real Estate Fund IV, L.P.,
200 South Biscayne Boulevard
Suite 1000
Miami, Florida  33131
(305) 755-9500
Fax: (305) 714-4340

By: */s/ Paul Steven Singerman*
          Paul Steven Singerman
          Fla. Bar No. 378860
          singerman@bergersingerman.com

- AND -

KLEHR HARRISON HARVEY
BRANZBURG LLP

William A. Harvey
Rona J. Rosen
1835 Market Street
Philadelphia, PA  191103
(215) 568-6060
Fax: (215) 568-6603
*Admitted pro hac vice*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the foregoing has been served via electronic transmission and U.S. Regular Mail, postage prepaid, upon all parties listed on the attached Service List on this 14th day of February, 2011.


*/s/ Paul Steven Singerman*
Paul Steven Singerman

## SERVICE LIST

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
Eugene E. Stearns
Email: *estearns@stearnsweaver.com*
Harold D. Moorefield, Jr.
Email: *hmoorefield@stearnsweaver.com*
Matthew W. Buttrick
Email: *mbuttrick@stearnsweaver.com*
Andrew E. Stearns
Email: *astearns@stearnsweaver.com*
Museum Tower, Suite 2200
150 West Flagler Street, Suite 2200
Miami, FL  33130
Telephone: (305) 789-3200
Facsimile:  (305) 789-3395
*Counsel to Trustee Dillworth*

Office of the United States Trustee
51 S.W. First Ave., Room 1204,
Miami, FL 33130

**KLEHR HARRISON HARVEY BRANZBURG LLP**
William A. Harvey, Esq.
Email: *wharvey@klehr.com*
Rona J. Rosen, Esq.
Email: *rrosen@klehr.com*
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-4145
Facsimile:  (215) 568-6603
*Counsel to the Lubert-Adler Defendants*

**BERGER SINGERMAN, P.A.**
Paul Steven Singerman
Email:*psingerman@bergersingerman.com*
Paul A. Avron
Email: *pavron@bergersingerman.com*
200 Biscayne Boulevard
Suite 1000
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340
*Counsel to the Lubert-Adler Defendants*

**SMITH MOORE LEATHERWOOD LLP**
Lynn F. Chandler
Email: *lynn.chandler@smithmoorelaw.com*
525 North Tryon Street
Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 384-2600
Facsimile: (704) 384-2800
*Counsel to the Ginn Defendants*

**KOZYAK TROPIN & THROCKMORTON, P.A.**
Charles W. Throckmorton
(Florida Bar No. 286192)
Email: *cwt@kttlaw.com*
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
Telephone: (305) 377-1800
Facsimile: (305) 372-3508
*Counsel to the Ginn Defendants*

3475774-1                              13