**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br>GINN-LA ST. LUCIE LTD., LLLP, *et al.*,<br><br>                 Debtors.<br>_____/ | **CASE NO. 08-29769-PGH**<br>All Cases Jointly Administered<br><br>Chapter 7<br><br>(4 Cases Substantively Consolidated Under Lead Case No. 08-29769-PGH)[1] |
| In re:<br>GINN-LA QUAIL WEST LTD., LLLP, *et al.*,<br><br>                 Debtors.<br>_____/ | (3 Cases Substantively Consolidated Under Lead Case No. 08-29774-PGH)[2] |
| DREW M DILLWORTH, Chapter 7 Trustee,<br><br>                 Plaintiff,<br><br>vs.<br><br>EDWARD R. GINN III; EDWARD R. GINN III REVOCABLE TRUST DATED SEPT. 14, 2002; ERG MANAGEMENT, LLC; ERG ENTERPRISES, L.P.; IRA M. LUBERT; DEAN S. ADLER; LUBERT-ADLER GROUP IV, L.P.; LUBERT-ADLER REAL ESTATE FUND IV, L.P.; LUBERT-ADLER REAL ESTATE PARALLEL FUND IV, L.P.; LUBERT-ADLER CAPITAL REAL ESTATE FUND IV, L.P.,<br><br>                 Defendants.<br>_____/ | **ADV. PRO. NO. 10-03807-PGH**<br><br>**FIRST AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT / PREFERENTIAL TRANSFERS** |

---

[1] The "Tesoro Debtors' Estates" (Nos. 08-29769-PGH, 08-29770-PGH, 08-29772-PGH, and 08-29773-PGH) are substantively consolidated into Lead Case No. 08-29769-PGH. *See* Order [D.E. 308/309]. The "Tesoro Debtors," and the last four digits of their respective tax identification numbers, are: (i) Ginn-LA St. Lucie Ltd., LLLP – 5632; (ii) Ginn-St Lucie GP, LLC – 0983; (iii) Tesoro Golf Club Condo., LLC – 4385; and (iv) The Tesoro Club, LLC – 1917. *See* 11 U.S.C. § 342(c)(1).

[2] The "Quail West Debtors' Estates" (Nos. 08-29774-PGH, 08-29775-PGH, and 08-29776-PGH) are substantively consolidated into Lead Case No. 08-29774-PGH. *See* Order [D.E. 34]. The "Quail West Debtors," and the last four digits of their respective tax identification numbers, are: (i) Ginn-LA Quail West Ltd., LLLP – 2397; (ii) Ginn-Quail West Beach, LLC – 9142; and (iii) Ginn-Quail West GP, LLC – 6313. *See* 11 U.S.C. § 342(c)(1).

**FIRST AMENDED COMPLAINT**

Plaintiff Drew M. Dillworth ("Trustee Dillworth"), in his capacity as Chapter 7 Trustee for the Tesoro Debtors' Estates and the Quail West Debtors' Estates, based upon information and belief, and as a result of his investigation to date, hereby sues the Defendants listed above, and alleges:

**INTRODUCTION**

1. Through this adversary proceeding, Trustee Dillworth seeks to avoid and recover for fraudulent or preferential transfers of Tesoro Debtor property, and Quail West Debtor property.

2. The Tesoro and Quail West Debtors were the "project-level" entities created to hold, develop, and operate the luxury master-planned residential communities known as Tesoro and Quail West, located in Port St. Lucie and near Naples, Florida, respectively.

3. During the time periods in question, Edward R. "Bobby" Ginn III ("Ginn") and the Lubert-Adler equity funds commonly referred to as "Lubert-Adler Funds III & IV" held equity ownership interests in the Tesoro and Quail West Debtors and were actively involved in the financing and development of Tesoro and Quail West, as well as other development projects.

4. The fraudulent / preferential transfers at issue in this litigation were made incident to a Credit Suisse loan refinancing of Tesoro, Quail West, and three other development projects, on a cross-collateralized basis. The three other projects were The River Club / Gardens (Florida), Laurelmor (North Carolina), and Ginn sur Mer (The Bahamas).

5. In connection with the refinancing, the ownership structure of the four U.S. projects was made uniform, while the Bahamas project retained disparate ownership, as follows:

| Equity Owner | Tesoro | Quail West | River Club | Laurelmor | Gin sur Mer |
|---|---|---|---|---|---|
| Ginn | 20% | 20% | 20% | 20% | 20% |
| Lubert-Adler Fund III | 32% | 32% | 32% | 32% | 0% |
| Lubert-Adler Fund IV | 48% | 48% | 48% | 48% | 80% |

Organization Charts, 06/06, MMMTQW01_033696, 173866.

-2-

6.  Lead Debtors Ginn-LA St. Lucie Ltd., LLLP and Ginn-LA Quail West Ltd., LLLP listed the transfers at issue in their Statements of Financial Affairs, in response to Question No. 3, which requires each debtor to identify "all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders."

7.  The pertinent portions of the Lead Debtors' amended responses to Question No. 3 read as follows:

| Debtor | Name and Address of Creditor and Relationship to Debtor | Date of Payment | Amount Paid |
|---|---|---|---|
| Ginn-LA St. Lucie Ltd., LLLP | Ginn-LA Conduit Lender, LLC [sic - s/b "Inc."]<br><br>215 Celebration Place<br>Suite 200<br>Celebration, FL 34747<br><br>Affiliate | 5/7/2008<br><br>*These payments were made from LLLP to Conduit Lender in connection with the Credit Suisse lead secured loans and were utilized, and allocated, to projects subject to the Credit Suisse secfured [sic] loans. | $31,947,006.46 |
| Ginn-LA Quail West Ltd., LLLP | Ginn-LA Conduit Lender, LLC [sic - s/b "Inc."]<br><br>215 Celebration Place<br>Suite 200<br>Celebration, FL 34747<br><br>Affiliate | 5/6/2008<br><br>*These payments were made from LLLP to Conduit Lender in connection with the Credit Suisse lead secured loans and were utilized, and allocated, to projects subject to the Credit Suisse secured loans. | $17,509,699.21 |

Case No. 08-29769-PGH, ECF No. 92, p. 28; Case No. 08-29774-PGH, ECF No. 23, p. 22.

8.  The purported "creditor," insider Ginn-LA Conduit Lender, Inc., was a shell entity formed in connection with the Credit Suisse loan refinancing, for tax purposes.

9.  Ginn-LA Conduit Lender was inserted into the corporate structure pertaining to the Ginn sur Mer Development, and, as its name implies, served as a conduit for the loan proceeds allocated to that project.

-3-

10.     Notably, the Lead Debtors' payments to Ginn-LA Conduit Lender in May of 2008 were *not* made – or used – to satisfy the Credit Suisse secured loan obligations *themselves*. They were made to satisfy phantom intercompany debts created for internal accounting purposes pursuant to the following accounting protocol:

> From Credit Suisse's perspective, there will be one common financing secured by a lien for the full amount of the aggregate borrowing against each of the Developments. Functionally speaking, this means that cash generated by on[e] Development in a particular quarter could be used, in its entirety, to repay the Credit Suisse loans, without regard to the fact that no other Development produced any revenues – or repaid any of the Credit Suisse debt – in that quarter.
>
> However, the [Ginn / Lubert-Adler] JV intends, for its own internal accounting purposes, to treat each Development individually, such that each will be deemed to have financial responsibility only for its allocable share of the overall borrowing. That allocable share will be directly related to the percentage of loan proceeds which is allocated, at closing, on account of each Development. In the event that a particular Development contributes disproportionately to the repayment of the loans, the "excess" payment made to Credit Suisse by such Development shall be deemed to have been made for the benefit of the other Developments and, as such, will be treated, for JV accounting purposes, as an interest-bearing loan to such other Developments (in ratable proportion to the imputed benefit conferred upon each such other Development).
>
> In essence, the JV will be keeping a running account of intercompany payables and receivables between the different Developments. However, there can be no assurance that the "debtor" Developments will eventually be able to fully repay their "debts" to the "creditor" Developments, and, in such event, the "creditor" Developments, though successful in their own right, will ultimately be dependent upon the eventual success of the "debtor" Developments to insure that the full profit actually earned, in real time, by such "creditor" Developments is in fact received by the investors in such Developments. In practical terms, the investors in the successful "creditor" Developments could end up with investment risk attributable to the "debtor" Developments.

Memo., Lubert-Adler Partners to Fund III & IV Advisory Boards, 06/02/06, LA043327 - 043337.

11.     In the words of one of the attorneys involved, this internal accounting protocol was "intended to be somewhat like accounting between separate divisions of a single company," *i.e.*, the "debt" was to be "view[ed] as *notional* rather than *real* debt." E-mail, C. Brewer to J. Klumph, 06/03/06, MMMTQW01_030343 - 030344 (emphasis added).

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

12. Here, the Lead Debtors' purported "debts" to Ginn-LA Conduit Lender resulted from a lack of Tesoro and Quail West lot and unit sales compared to Ginn sur Mer lot and unit sales, though the latter Development was by no means "successful in its own right," either.

13. In reality, however, those "debts" were merely "*notional* rather than real debt," *i.e.*, "purely speculative," "theoretical," "existing in thought or mind only," "imaginary." Shorter Oxford English Dictionary (5th ed. 2002); Merriam-Webster Online Dictionary (2010).

14. As a consequence, the payments made in May 2008 to "satisfy" those "debts" are avoidable as fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A) & (B).

15. Alternatively, if the payments are deemed to have been made to satisfy "real debts," the payments are avoidable as preferential transfers pursuant to 11 U.S.C. § 547(b).

16. Either way, the payments are recoverable from the persons/entities for whose benefit they were made, namely, "the investors in the [more] successful [Ginn sur Mer] Development[]." 11 U.S.C. § 550(a)(1).

## JURISDICTION AND VENUE

17. This adversary proceeding arises under the above-captioned jointly administered Chapter 7 cases. It is, therefore, a core proceeding within the meaning of 28 U.S.C. § 157.

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

19. The Plaintiff, Drew M. Dillworth, is the duly appointed, qualified, and acting Chapter 7 Trustee for the Tesoro Debtors' Estates and the Quail West Debtors' Estates.

20. Defendant Edward R. Ginn III is an individual who specializes in land acquisition, real estate development, and related matters. He is sued herein both individually and in his capacity as Trustee of the Edward R. Ginn III Revocable Trust dated September 14, 2002.

-5-

21. Defendant Edward R. Ginn III Revocable Trust dated September 14, 2002, is a Trust which held a 99% interest in Defendant ERG Enterprises, L.P.

22. Defendant ERG Management, LLC, is a South Carolina limited liability company which held the remaining 1% interest in Defendant ERG Enterprises, L.P.

23. Defendant ERG Enterprises, L.P., is a Georgia limited partnership which, during the time period in question, held a 20% interest in the Ginn sur Mer Development.

24. Defendants Ira M. Lubert ("Lubert") and Dean S. Adler ("Adler") are individuals who co-founded and co-own Lubert-Adler Management Co., L.P., d/b/a Lubert-Adler Partners, L.P., and the affiliated Lubert-Adler "Group" and "Fund" entities.

25. Defendant Lubert-Adler Group IV, L.P., is a Delaware limited partnership which serves as the General Partner of – and held a carried equity ownership interest in – Defendants Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. (the "Lubert-Adler Fund IV Entities").

26. The Lubert-Adler Fund IV Entities are Delaware limited partnerships which, collectively, held an 80% interest in the Ginn sur Mer Development.

27. For convenience, Edward R. Ginn III, the Edward R. Ginn III Revocable Trust dated September 14, 2002, ERG Management, LLC, and ERG Enterprises, L.P. are referred to herein as the "Ginn Defendants"; while Ira M. Lubert, Dean S. Adler, Lubert-Adler Group IV, L.P., and the Lubert-Adler Fund IV Entities are referred to herein as the "Lubert-Adler Defendants."

28. The Defendants are properly joined in this action pursuant to Fed. R. Civ. P. 20, made applicable by Fed. R. Bankr. P. 7020, because the right to relief asserted against all Defendants arises out of the same transaction or occurrence, and questions of law and fact common to all Defendants will arise in this action.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

## GENERAL ALLEGATIONS

A. **The Tesoro Transfers At Issue**

29. On May 7, 2008, Debtor Ginn-LA St. Lucie Ltd., LLLP (the "Tesoro LLLP") transferred $31,947,006.46 in which it held a legal and equitable interest (the "Tesoro Payment") to insider Ginn-LA Conduit Lender, Inc.

30. The Tesoro Payment was made to "satisfy" a phantom "intercompany debt" "owed" the Ginn sur Mer Development, which had been created for "internal accounting purposes," and was intended from the very outset to be "view[ed] as *notional* rather than real debt." Memo., Lubert-Adler Partners to Fund III & IV Advisory Boards, 06/02/06, LA043327 - 043337; E-mail, C. Brewer to J. Klumph, 06/03/06, MMMTQW01_030343 - 030344 (emphasis added).

31. The Tesoro LLLP made the Tesoro Payment approximately one week after entering into a Joint Defense, Common Interest, and Information Sharing Agreement ("JDA") which "plainly recite[d] . . . [an] 'anticipation' of a possible bankruptcy filing" under Chapter 11, and "whose purpose [wa]s to protect [the] debtor's adverse insider's prepetition communications[,] to shield evidence of their wrongdoing." Order, Case No. 08-29769-PGH, ECF No. 572, pp. 12-13.

32. By that time, the Ginn and Lubert-Adler Defendants had essentially "written off" Tesoro, and were focusing their efforts on sustaining Ginn sur Mer, which was also struggling but was viewed internally as the Development with the greatest potential for profit.

33. The Tesoro LLLP received no "value," whatsoever, for the Tesoro Payment. It merely received the "satisfaction" of a "*notional* rather than real debt."

34. To make matters worse, when the Tesoro LLLP made the Tesoro Payment, it was already insolvent as a result of the aforementioned Credit Suisse secured loan transaction, much too thinly capitalized to survive, and not paying normal and ordinary debts as they came due.

35. On December 23, 2008, after a series of defaults and efforts to restructure those loans, each of the Tesoro Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

### B. The Quail West Transfers At Issue

36. On May 6, 2008, Debtor Ginn-LA Quail West Ltd., LLLP (the "Quail West LLLP") transferred $17,509,699.21 in which it held a legal and equitable interest (the "Quail West Payment") to insider Ginn-LA Conduit Lender, Inc.

37. The Quail West Payment was made to "satisfy" a phantom "intercompany debt" "owed" the Ginn sur Mer Development, which had been created for "internal accounting purposes," and was intended from the very outset to be "view[ed] as *notional* rather than real debt." Memo., Lubert-Adler Partners to Fund III & IV Advisory Boards, 06/02/06, LA043327 - 043337; E-mail, C. Brewer to J. Klumph, 06/03/06, MMMTQW01_030343 - 030344 (emphasis added).

38. The Quail West LLLP made the Quail West Payment less than one week after entering into a Joint Defense, Common Interest, and Information Sharing Agreement ("JDA") which "plainly recite[d] . . . [an] 'anticipation' of a possible bankruptcy filing" under Chapter 11, and "whose purpose [wa]s to protect [the] debtor's adverse insider's prepetition communications[,] to shield evidence of their wrongdoing." Order, Case No. 08-29769-PGH, ECF No. 572, pp. 12-13.

39. By that time, the Ginn and Lubert-Adler Defendants had essentially "written off" Quail West, and were focusing their efforts on sustaining Ginn sur Mer, which was also struggling but was viewed internally as the Development with the greatest potential for profit.

40. The Quail West LLLP received no "value," whatsoever, for the Quail West Payment. It merely received the "satisfaction" of a "*notional* rather than real debt."

41. To make matters worse, when the Quail West LLLP made the Quail West Payment, it was already insolvent as a result of the aforementioned Credit Suisse secured loan transaction, much too thinly capitalized to survive, and not paying normal and ordinary debts as they came due.

42. On December 23, 2008, after a series of defaults and efforts to restructure those loans, each of the Quail West Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

C. **Allegations Relating To 11 U.S.C. § 550**

43. Despite multiple requests, the Ginn and Lubert-Adler Defendants have, to date, refused to disclose what Ginn-LA Conduit Lender did with the Tesoro and Quail West Payments, how the funds were ultimately used, etc.

44. It is, therefore, unclear whether Ginn-LA Conduit Lender was "the initial transferee" of the Tesoro and Quail West Payments within the meaning of 11 U.S.C. § 550(a)(1), or simply received the payments as an agent and/or conduit for other entities in the corporate structure pertaining to the Ginn sur Mer Development.

45. As noted above, however, the Lubert-Adler Defendants *have* produced documents disclosing the *purpose* of the accounting protocol which led to the Tesoro and Quail West Payments. Its purpose was to offset "investment risk attributable to [less successful] 'debtor' Developments" as a result of cross-collateralization, and "to insure that the full profit actually earned, in real time, by [more successful] Developments [wa]s in fact received by the investors in such Developments." Memo., Lubert-Adler Partners to Fund III & IV Advisory Boards, 06/02/06, LA043327 - 043337.

46. In other words, according to Lubert-Adler's own internal documents, the purpose of the accounting protocol was to protect and benefit investors in the more successful Developments.

47. Thus, at a minimum, the Tesoro and Quail West Payments were made to "benefit" the investors in the Ginn sur Mer Development, within the meaning of 11 U.S.C. § 550(a)(1).

48. Indeed, but for the Tesoro and Quail West Payments, the investors in Ginn sur Mer would have been required to inject additional capital into that Development, as equity or debt, in an amount at least equivalent to the payments, in order to sustain the Development.

49. Each of the named Defendants was an investor in the Ginn sur Mer Development, either directly or through other affiliated entities; and, accordingly, was an entity for whose benefit the transfers at issue were made within the meaning of 11 U.S.C. § 550(a)(1).

STEARNS  WEAVER  MILLER  WEISSLER  ALHADEFF  &  SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

## COUNT I
## AVOIDANCE OF FRAUDULENT TRANSFER
## TESORO PAYMENT
## (11 U.S.C. § 548(a)(1)(A))

50. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 35, and 43 through 49, as if fully set forth herein.

51. The Tesoro LLLP made the Tesoro Payment with Tesoro LLLP property within two years of its Chapter 7 filing, with actual intent to hinder, delay, or defraud entities to which it was or thereafter became indebted, as evidenced by the following "badges of fraud":

(a) Tesoro LLLP made the payment to an insider (Ginn-LA Conduit Lender), for the benefit of other insiders (the Defendants).

(b) Tesoro LLLP made the payment approximately one week after entering a Joint Defense, Common Interest, and Information Sharing Agreement "in 'anticipation' of a possible bankruptcy filing under Chapter 11," "whose purpose [wa]s to protect a debtor's adverse insider's prepetition communications . . ., [and] shield evidence of their wrongdoing," Order, Case No. 08-29769-PGH [ECF No. 572, pp. 12-13];

(c) Tesoro LLLP did not receive reasonably equivalent value for the payment;

(d) Tesoro LLLP was insolvent at the time the payment was made; and

(e) Tesoro LLLP was not paying its normal and ordinary debts as they came due at the time the payment was made.

52. The Tesoro Payment is, therefore, avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, avoiding the Tesoro Payment, awarding attorneys' fees and expenses, and granting any further relief deemed equitable and just.

STEARNS  WEAVER  MILLER  WEISSLER  ALHADEFF  &  SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

## COUNT II
## AVOIDANCE OF FRAUDULENT TRANSFER
## TESORO PAYMENT
## (11 U.S.C. § 548(a)(1)(B))

53. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 35, and 43 through 49, as if fully set forth herein.

54. The Tesoro LLLP made the Tesoro Payment with Tesoro LLLP property within two years of its Chapter 7 filing.

55. The Tesoro LLLP received less than reasonably equivalent value in exchange for the Tesoro Payment.

56. When the Tesoro LLLP made the Tesoro Payment, it was already insolvent; it was engaged in a business for which the property remaining with it after the Tesoro Payment constituted unreasonably small capital; and it intended to incur, or believed it would incur, debts beyond its ability to pay as such debts matured.

57. The Tesoro Payment is, therefore, avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, avoiding the Tesoro Payment, awarding attorneys' fees and expenses, and granting any further relief deemed equitable and just.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

## COUNT III
## AVOIDANCE OF PREFERENTIAL TRANSFER
## TESORO PAYMENT
## (11 U.S.C. § 547(b))

58. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 35, and 43 through 49, as if fully set forth herein.

59. The Tesoro LLLP made the Tesoro Payment with Tesoro LLLP property within one year of its Chapter 7 filing, to a person/entity which was an insider at the time the payment was made (Ginn-LA Conduit Lender), for the benefit of other persons/entities which were insiders at the time the payment was made (the Defendants).

60. If the Tesoro LLLP is deemed to have made the Tesoro Payment to satisfy a "real" debt, the Tesoro Payment would constitute a payment to or for the benefit of a creditor, made for or on account of an antecedent debt owed by Tesoro LLLP before said payment was made, while Tesoro LLLP was insolvent, which enabled said creditor to receive more than it would have received if the payment had not been made and it received payment of such debt to the extent provided under the Bankruptcy Code.

61. Thus, if the Tesoro Payment is deemed to have been made to satisfy a "real" debt, the payment is avoidable as preferential transfers pursuant to 11 U.S.C. § 547(b).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, avoiding the Tesoro Payment, awarding attorneys' fees and expenses, and granting any further relief deemed equitable and just.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

## COUNT IV
## RECOVERY OF FRAUDULENT OR PREFERENTIAL TRANSFER
## TESORO PAYMENT
## (11 U.S.C. § 550(a))

62. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 35, 43 through 49, 51 through 52, 54 through 57, and 59 through 61, as if fully set forth herein.

63. With respect to the Tesoro Payment, each of the Defendants in this case was an entity for whose benefit a transfer was made within the meaning of 11 U.S.C. § 550(a)(1).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, awarding, for the benefit of the Tesoro Debtors' Estates, recovery of the Tesoro Payment, plus pre-judgment and post-judgment interest, attorneys' fees and expenses, and any further relief deemed equitable and just.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

## COUNT V
## AVOIDANCE OF FRAUDULENT TRANSFER
## QUAIL WEST PAYMENT
## (11 U.S.C. § 548(a)(1)(A))

64. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 28, and 36 through 49, as if fully set forth herein.

65. The Quail West LLLP made the Quail West Payment with Quail West LLLP property within two years of its Chapter 7 filing, with actual intent to hinder, delay, or defraud entities to which it was or thereafter became indebted, as evidenced by the following "badges of fraud":

(a) Quail West LLLP made the payment to an insider (Ginn-LA Conduit Lender), for the benefit of other insiders (the Defendants).

(b) Quail West LLLP made the payment less than one week after entering a Joint Defense, Common Interest, and Information Sharing Agreement "in 'anticipation' of a possible bankruptcy filing under Chapter 11," "whose purpose [wa]s to protect a debtor's adverse insider's prepetition communications . . ., [and] shield evidence of their wrongdoing," Order, Case No. 08-29769-PGH [ECF No. 572, pp. 12-13];

(c) Quail West LLLP did not receive reasonably equivalent value for the payment;

(d) Quail West LLLP was insolvent at the time the payment was made; and

(e) Quail West LLLP was not paying its normal and ordinary debts as they came due at the time the payment was made.

66. The Quail West Payment is, therefore, avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, avoiding the Quail West Payment, awarding attorneys' fees and expenses, and granting any further relief deemed equitable and just.

-14-

-15-

## COUNT VI
## AVOIDANCE OF FRAUDULENT TRANSFER
## QUAIL WEST PAYMENT
## (11 U.S.C. § 548(a)(1)(B))

67. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 28, and 36 through 49, as if fully set forth herein.

68. The Quail West LLLP made the Quail West Payment with Quail West LLLP property within two years of its Chapter 7 filing.

69. The Quail West LLLP received less than reasonably equivalent value in exchange for the Quail West Payment.

70. When the Quail West LLLP made the Quail West Payment, it was already insolvent; it was engaged in a business for which the property remaining with it after the Tesoro Payment constituted unreasonably small capital; and it intended to incur, or believed it would incur, debts beyond its ability to pay as such debts matured.

71. The Quail West Payment is, therefore, avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, avoiding the Quail West Payment, awarding attorneys' fees and expenses, and granting any further relief deemed equitable and just.

-15-

STEARNS  WEAVER  MILLER  WEISSLER  ALHADEFF  &  SITTERSON,  P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

## COUNT VII
## AVOIDANCE OF PREFERENTIAL TRANSFER
## QUAIL WEST PAYMENT
## (11 U.S.C. § 547(b))

72. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 28, and 36 through 49, as if fully set forth herein.

73. The Quail West LLLP made the Quail West Payment with Quail West LLLP property within one year of its Chapter 7 filing, to a person/entity which was an insider at the time the payment was made (Ginn-LA Conduit Lender), for the benefit of other persons/entities which were insiders at the time the payment was made (the Defendants).

74. If the Quail West LLLP is deemed to have made the Quail West Payment to satisfy a "real" debt, the Quail West Payment would constitute a payment to or for the benefit of a creditor, made for or on account of an antecedent debt owed by Quail West LLLP before said payment was made, while Quail West LLLP was insolvent, which enabled said creditor to receive more than it would have received if the payment had not been made and it received payment of such debt to the extent provided under the Bankruptcy Code.

75. Thus, if the Quail West Payment is deemed to have been made to satisfy a "real" debt, the payment is avoidable as preferential transfers pursuant to 11 U.S.C. § 547(b).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, avoiding the Quail West Payment, awarding attorneys' fees and expenses, and granting any further relief deemed equitable and just.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

-17-

## COUNT VIII
## RECOVERY OF FRAUDULENT OR PREFERENTIAL TRANSFER
## QUAIL WEST PAYMENT
## (11 U.S.C. § 550(a))

76. Trustee Dillworth repeats and re-alleges the allegations in paragraphs 1 through 28, 36 through 49, 65 through 66, 68 through 71, and 73 through 75, as if fully set forth herein.

77. With respect to the Quail West Payment, each of the Defendants in this case was an entity for whose benefit a transfer was made within the meaning of 11 U.S.C. § 550(a)(1).

WHEREFORE, Trustee Dillworth respectfully requests entry of a Judgment in his favor and against the Defendants, awarding, for the benefit of the Quail West Debtors' Estates, recovery of the Quail West Payment, plus pre-judgment and post-judgment interest, attorneys' fees and expenses, and any further relief deemed equitable and just.

STEARNS  WEAVER  MILLER  WEISSLER  ALHADEFF  &  SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

Dated: March 15, 2011

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.

Attorneys for Drew M. Dillworth,
Chapter 7 Trustee of the Tesoro Debtors' Estates
and the Quail West Debtors' Estates

Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone:  (305) 789-3200
Facsimile:   (305) 789-3395

I hereby certify that I am admitted to the Bar of
the United States District Court for the Southern District
of Florida and I am in compliance with the additional
qualifications to practice in this Court set forth in
Local Rule 2090-1(A).


By:  /s/  Harold D. Moorefield, Jr.
     EUGENE E. STEARNS
     Fla. Bar No. 149335
     estearns@stearnsweaver.com
     HAROLD D. MOOREFIELD, JR.
     Fla. Bar No. 239291
     hmoorefield@stearnsweaver.com
     MATTHEW W. BUTTRICK
     Fla. Bar No. 176028
     mbuttrick@stearnsweaver.com
     ANDREW E. STEARNS
     Fla. Bar No. 661651
     astearns@stearnsweaver.com

-18-

STEARNS  WEAVER  MILLER  WEISSLER  ALHADEFF  &  SITTERSON,  P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200