UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

_____

In re:  :  CASE NO. 08-29769(PGH)
GINN-LA ST. LUCIE LTD., LLLP, *et al.*[1],  :  All Cases Jointly Administered
 :
Debtors.  :  Chapter 7
_____
In re:  :  (4 Cases Substantively Consolidated Under Lead Case No. 08-29769-PGH)
GINN-LA QUAIL WEST., LTD, LLLP, *et al.*[2],  :
 :  (3 Cases Substantively Consolidated Under Lead Case No. 08-29774-PGH)
Debtors.  :
_____  :
DREW M. DILLWORTH, Chapter 7 Trustee,  :  **ADV. PRO. NO. 10-03807-PGH**
 :
Plaintiff,  :
 :
vs.  :
 :
EDWARD R. GINN III, *et al.*,  :
 :
Defendants.  :
_____  :

## GINN DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Edward R. Ginn III ("Ginn"), Edward R. Ginn III Revocable Trust Dated Sept. 14, 2002 (the "Ginn Trust"), ERG Management, LLC ("Management"), and ERG Enterprises, L.P. ("Enterprises") move pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012 for an

---

[1] The "Tesoro Debtors' Estates" (Nos. 08-29769-PGH, 08-29770-PGH, 08-29772-PGH, 08-29773-PGH) are substantively consolidated into Lead Case No. 08-29769-PGH. *See* D.E. 308/309. The "Tesoro Debtors," and the last four digits of their respective tax identification numbers are: (i) Ginn-LA St. Lucie Ltd., LLLP – 5632; (ii) Ginn-St Lucie GP, LLC – 0983; (iii) Tesoro Golf Club Condo., LLC – 4385; (iv) The Tesoro Club, LLC – 1917. *See* 11 U.S.C. § 342(c)(1).

[2] The "Quail West Debtors' Estates" (Nos. 08-29774-PGH, 08-29775-PGH, and 08-29776-PGH) are substantively consolidated into Lead Case No. 08-29774-PGH. *See* D.E. 34. The "Quail West Debtors," and the last four digits of their respective tax identification numbers, are: (i) Ginn-LA Quail West Ltd., LLLP – 2397; (ii) Ginn-Quail West Beach, LLC – 9142; and (iii) Ginn-Quail West GP, LLC – 6313. *See* 11 U.S.C. § 342(c)(1).

order dismissing the Trustee's *First Amended Complaint for Avoidance and Recovery of Fraudulent/Preferential Transfers* (the "First Amended Complaint" or "FAC") (ECF No. 27).[3]

## INTRODUCTION

### A.  Withdrawal of Original Complaint

As he did in his original Complaint (ECF No. 1), the Trustee seeks to avoid allegedly fraudulent or preferential transfers to Ginn-LA Conduit Lender ("Conduit Lender")(a non-party to this action) that were listed in the Debtors' Statements of Financial Affairs, and to recover the value of the transfers from, *inter alia*, the Ginn Defendants.  (FAC ¶ 6).  The Trustee acknowledges that the Ginn Defendants are not transferees, and relies exclusively on the theory that they are liable under 11 U.S.C. § 550(a)(1), as entities for whose benefit the transfers were made.

Confronted with motions to dismiss the original Complaint for failure to allege any direct, quantifiable benefit to the Defendants from the transfers, the Trustee withdrew that Complaint prior to hearing on the motions, and sought additional time to amend.  (ECF Nos. 7, 8, 17, and 19).  Having implicitly conceded the pleading defects of the original Complaint, the Trustee again falls short in the First Amended Complaint of alleging any direct, quantifiable benefit to the Ginn Defendants.  Accordingly, the First Amended Complaint fails to state a claim upon which relief can be granted, and should be dismissed in its entirety.

### B.  The New Allegations in the First Amended Complaint

The Trustee has deleted his conclusory allegation from paragraph 1 of the original Complaint that the allegedly avoidable transfers were "made for the benefit of" the Defendants.

---

[3] Ginn, the Ginn Trust, Management and Enterprises are collectively referred to hereinafter as the "Ginn Defendants."  The other defendants are Ira M. Lubert, Dean S. Adler, Lubert-Adler Management Co., L.P., Lubert-Adler Group IV, L.P., Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. (collectively, the "Lubert-Adler Defendants").  The Ginn Defendants and the Lubert-Adler Defendants are collectively referred to hereinafter as the "Defendants."

2

Beyond that, not much else has changed in the First Amended Complaint. The Trustee's theory is that the Debtors transferred value from their developments (Tesoro and Quail West) to Conduit Lender, for the benefit of investors in another development known as Ginn Sur Mer. The only new allegations in the First Amended Complaint of an alleged benefit to the Defendants relate to an accounting protocol that the Trustee contends was implemented "to protect and benefit investors in the more successful Developments [than the Tesoro and Quail West developments owned by the Debtors]." (FAC ¶¶ 45-47).

The Trustee alleges that the Debtors' transfer to Conduit Lender conferred a benefit upon each of the Defendants, as direct or indirect investors in the "more successful" Ginn Sur Mer Development because they would otherwise "have been required to inject additional capital into that Development, as equity or debt, in an amount at least equivalent to the payments, in order to sustain [Ginn Sur Mer]." (FAC ¶ 48-49). Thus, the Trustee again rests his claim against the Ginn Defendants solely upon the allegation that they received a "benefit" by virtue of owning an equity interest as investors in the Ginn Sur Mer Development.

### C.     The Motion to Dismiss Standard

*Twombly* and *Iqbal* [4] require this Court, in considering a motion to dismiss under Rule 12(b)(6), to (1) strip away and discard all legal conclusions and formulaic recitations of claims; and (2) examine the sufficiency of the remaining factual allegations to determine if the Trustee has stated a plausible claim for relief. *See*, *e.g.*, *In re Levitt*, Adv. No. 09-2273-BKC-RBR-A, 2010 WL 1539898, at *2 (Bankr. S.D. Fla. Apr. 16, 2010) (dismissing complaint seeking to avoid fraudulent and preferential transfers for failure to adequately plead claims). Conclusory allegations are not entitled to be assumed true; the Trustee must plead enough facts that plausibly

---

[4]     *Bell Atlantic Corp. v. Twombly¸* 550 U.S. 544 (2007) ("*Twombly*"); *Ashcroft v. Iqbal,* ___ U.S. ____, 129 S. Ct. 1937 (2009) ("*Iqbal*").

establish grounds for a cognizable claim.  *Twombly,* 550 U.S. at 555 ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal,* 129 S.Ct. at 1949-50 (pleadings that are no more than conclusions are not entitled to assumption of truth).

## ARGUMENT

### A. The Trustee Does Not Allege That the Ginn Defendants Received a Direct Benefit From the Initial Transfer

Assuming *arguendo* that the Trustee is able to avoid the allegedly fraudulent or preferential transfers to Conduit Lender, he may recover the avoided transfers only from:

> (1) the initial transferee of such transfer or *the entity for whose benefit such transfer was made*; or
>
>  (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (emphasis added).

In this case, there is no allegation that the Ginn Defendants are either initial or subsequent transferees of the payments sought to be avoided.  The Trustee's sole basis for recovery from the Ginn Defendants is as entities for whose benefit such transfers were made.  However, the statutory provision permitting recovery from a person for whose benefit a transfer is made is not merely a reference to the "next pair of hands," but instead refers to persons who benefit directly from the initial transfer "without ever holding the funds."  *Faulkner v. Kornman (In re Heritage Org., LLC),* 413 B.R. 438, 495 (Bankr. N.D. Tex. 2009).  The predicate benefit must flow <u>directly</u> from the avoided <u>initial</u> transfer itself:

> Under the plain statutory language of Section 550(a)(1), the phrase "*such transfer*," with reference to the *initial transferee*, is the *same* transfer for purposes of the "entity for whose benefit *such transfer* was made."
> . . . .
> Simply put, the "for whose benefit" language does not apply where the "benefit" is not the immediate and necessary consequence of the initial transfer, but flows from the manner in which the initial transfer is *used* by its recipient – the "benefit must derive directly from the [initial] transfer, not from the use to which it is put by the transferee."

4

*In re TOUSA, Inc.*, ECF No. 131, Case No. 10-cv-60017-ASG, Mem. Op. at 95, 100 (S.D. Fla. Feb. 11, 2011) (emphasis in original) (citing *In re Imageset*, 299 B.R. at 718).

Here, the "benefit" to the Ginn Defendants was allegedly derived from an "accounting protocol" with an alleged purpose "to protect and benefit investors in the more successful Developments." (FAC ¶ 46). This purported benefit flowed to the investors in the Ginn Sur Mer Development because the funds would be available to sustain the Ginn Sur Mer Development without the necessity of additional capital from the investors.[5] However, whatever theory the Trustee might choose to advance regarding Conduit Lender's alleged <u>post-initial transfer</u> use of those funds to sustain Ginn Sur Mer, it is entirely irrelevant to his ability to recover from the Defendants as persons for whose benefit the <u>initial</u> transfer was made. "The benefit must derive *directly* from the transfer, not from the use to which it is put by the transferee . . . someone who receives the money later on is not an 'entity for whose benefit such transfer was made.;" *Turner v. Phoenix Fin., LLC (In re Imageset, Inc.),* 299 B.R. 709, 718 (Bankr. D. Me. 2003) (quoting *Bonded Fin. Servs., Inc. v. European Am. Bank (In re Bonded Fin. Servs., Inc.),* 838 F.2d 890, 896 (7th Cir. 1988) (emphasis added).

Therefore, in order to recover from the Defendants under section 550(a)(1) as persons for whose benefit a fraudulent transfer was made, the Trustee must plead facts (not naked conclusions) establishing that the Defendants derived a "quantifiable benefit or one bearing the necessary correspondence to the value of the property transferred or received." *In re Int'l Mgmt. Assocs.*, 399 F.3d 1288, 1294 (11th Cir. 2005) (citing *Mack v. Newton*, 737 F.2d 1343, 1359-60); *In re Life Fund, 5.1 LLC*, Adv. No. 10 A 42, 2010 WL 2650024, at *5 (Bankr. N.D. Ill. June 20,

---

[5] Presumably, this "protection and benefit" was attributable to the fact that some investors owned different percentages in the Developments. (FAC ¶ 5). However, as the chart in ¶ 5 of the FAC reflects, the Ginn Defendants' ownership was uniform across all Developments. Thus, as to these Defendants, this presumptive "benefit and protection" could not exist.

2010) ("An entity for whose benefit a transfer was made must actually receive a benefit from the transfer; that the transferor intended to confer a benefit on the transferee is not enough.").

      B.      **The Trustee's Allegations Regarding the Ginn Defendants' Alleged "Interest" in Conduit Lender or Ginn Sur Mer Are Insufficient**

Furthermore, the Trustee does not allege that the Ginn Defendants had a direct ownership interest in the initial transferee, Conduit Lender.  As to the Ginn Defendants other than Enterprises, the Trustee fails to allege any facts directly connecting any of them to the Ginn Sur Mer Development.  At most, the Trustee alleges the existence of a disjointed chain of ownership in which (i) the Ginn Trust and Management together held the partnership interests in Enterprises (FAC ¶¶ 21, 22); (ii) Enterprises "held a 20% interest in the Ginn Sur Mer Development" (FAC ¶ 23);  and (iii) Conduit Lender "was inserted into the corporate structure pertaining to the Ginn Sur Mer Development . . . as a conduit for the loan proceeds allocated to that project." (FAC ¶ 9).

The Trustee's allegations concerning the chain of ownership are insufficient and, in any event, legally irrelevant to his section 550(a)(1) theory.  As a matter of law, it is not enough to allege a mere equity interest in an initial transferee, whether that interest is direct or indirect, to subject the equity holder to liability under section 550(a)(1) as an "entity for whose benefit such transfer was made." As the court correctly observed in *In re Hansen*, 341 B.R. 638 (Bankr. N.D. Ill. 2006):

> Nothing in section 550(a)(1) indicates that corporate form can be thrust aside and all voidable transfers to a corporation recovered from its shareholders on the mere assumption that shareholders somehow automatically "benefit" from such transfers.  If corporate existence is to be observed, transfers cannot be recovered even from a shareholder who by virtue of his majority ownership ostensibly controls the corporation.  Something more than mere status as a shareholder, officer, or director must be shown.

341 B.R. at 645 (internal citations omitted); *see also In re The Brown Schs.*, 386 B.R. 37, 54 (Bankr. D. Del. 2008) (rejecting trustee's contention that defendant's status as a senior officer of

6

initial transferee, without more, was sufficient to establish a benefit from the transfers); *In re Imageset*, 299 B.R. at 718 (refusing to impose liability on defendants based upon status as members of a limited liability company that received transfers from the debtor); *Mack*, 737 F.2d at 1359-60 (principals in a partnership received only "incidental, unquantifiable, and remote benefit bearing no necessary correspondence to the value of the property transferred or received").

The Eleventh Circuit closely adheres to the requirement of a direct, quantifiable benefit as a condition to imposition of liability under section 550(a)(1) on an equity investor. In *Int'l Management Associates*, the trustee sought to impose liability on the sole remaining shareholder of the debtor who obtained control of all the debtor's assets as the result of redeeming the shares of the other shareholder for less than fair market value. *Int'l Mgmt. Assocs.*, 399 F.3d at 1292. In refusing to impose liability, the Eleventh Circuit noted that "[t]he paradigm case of a benefit under section 550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor." *Id.* at 1292-93 (citations omitted). However, as contrasted with this paradigm, the Eleventh Circuit concluded that the control over the debtor's assets obtained by the remaining shareholder "d[id] not give rise to a quantifiable benefit or one bearing the 'necessary correspondence to the value of the property transferred or received.'" *Id.* (citing *Mack*, 737 F.2d at 1359-60).[6]

---

[6] The Eleventh Circuit also distinguished the facts in *International Management Associates* from those of *In re B.S. Livingston & Co., Inc.*, 186 B.R. 841 (Bankr. D.N.J. 1995), where liability was imposed on controlling shareholders who received lucrative positions in the acquiring company in connection with the sale of the debtor's core business:

> Although *Livingston* may present a "benefit" that is on the far edge of qualification under 11 U.S.C. § 550(a), there is no obvious violence to the language in stating that the benefit of a lucrative position, like the benefit experienced by a guarantor, may be considered direct, ascertainable and quantifiable, unlike the "benefit" to the [remaining shareholder here].

399 F.3d at 1293.

Here, the Trustee's crucial allegation –that the purpose of the accounting protocol was to "protect and benefit investors in the more successful Developments" –is merely a "naked assertion" masquerading as a factual allegation; and, without further factual enhancement, such an assertion must be stripped away and discarded. Moreover, even if such a conclusory allegation were to be taken as true, the remaining allegations of the Fist Amended Complaint that, but for the transfers, the Defendants would have been required to inject additional capital to sustain the Ginn Sur Mer Development, do not raise even the remotest possibility of the type of direct, quantifiable benefit required by section 550(a)(1) to state a claim plausible on its face against any Ginn Defendant by virtue of being an investor in the Ginn Sur Mer Development.

## CONCLUSION

This Court should dismiss the First Amended Complaint.

Dated:  March 25, 2011

>Respectfully submitted,
>
>**KOZYAK TROPIN & THROCKMORTON, P.A.**
>Counsel to Edward R. Ginn III, Edward R. Ginn Revocable Trust Dated Sept. 14, 2002, ERG Management, LLC, and ERG Enterprises, L.P.
>2525 Ponce de Leon, 9th Floor
>Miami, Florida 33134
>Telephone: (305) 377-1800
>Facsimile: (305) 372-3508
>
>By: /s/ Charles W. Throckmorton
>      Charles W. Throckmorton
>      Fla. Bar No. 286192
>      cwt@kttlaw.com
>
>- AND -
>
>**SMITH MOORE LEATHERWOOD LLP**
>525 North Tryon Street, Suite 1400
>Charlotte, North Carolina 28202
>Telephone: (704) 384-2600
>Facsimile: (704) 384-2800

By: /s/ Lynn F. Chandler
Lynn F. Chandler
Fla. Bar. No. 946761
lynn.chandler@smithmoorelaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the Court's CM/ECF notification and/or U.S. Mail to all parties on the attached service list on March 25, 2011.

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, P.A.**
Counsel to Edward R. Ginn III, Edward R. Ginn Revocable Trust Dated Sept. 14, 2002, ERG Management, LLC, and ERG Enterprises, L.P.

2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
Telephone: (305) 377-1800
Facsimile: (305) 372-3508

By: /s/ Charles W. Throckmorton
Charles W. Throckmorton
Fla. Bar No. 286192
cwt@kttlaw.com

- AND -

**SMITH MOORE LEATHERWOOD LLP**
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 384-2600
Facsimile: (704) 384-2800

By: /s/ Lynn F. Chandler
Lynn F. Chandler
Fla. Bar. No. 946761
lynn.chandler@smithmoorelaw.com

9

## **SERVICE LIST**

### ADV. PRO. NO 10-03087-PGH
*DREW M. DILLWORTH, Chapter 7 Trustee vs. EDWARD R. GINN III, et al.,*

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

Eugene E. Sterns, Esq.
estearns@stearnsweaver.com
Harold D. Moorefield, Jr., Esq.
hmoorefield@stearnsweaver.com
Matthew W. Buttrick, Esq.
mbuttrick@stearnsweaver.com
Andrew W. Stearns, Esq.
astearns@stearnsweaver.com
Museum Tower
150 West Flagler Street, Suite 2200
Miami, FL 33130

*Counsel to Drew Dillworth, Trustee*

**BERGER SINGERMAN, PA**
Paul Steven Singerman, Esq.
singerman@bergersingerman.com
Paul A. Avron, Esq.
pavron@bergersingerman.com
200 S. Biscayne Blvd. #1000
Miami, FL 33131

*Counsel to Lubert-Adler Defendants*

**KLEHR HARRISON HARVEY BRANZBURG LLP**
William A. Harvey, Esq.
wharvey@klehr.com
Rona J. Rosen, Esq.
rrosen@klehr.com
1835 Market Street, Suite 1400
Philadelphia, PA 19103

*Counsel to Lubert-Adler Defendants*