UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

|   |   |
|---|---|
| In re:<br>GINN-LA ST. LUCIE LTD., LLLP, *et al.*,<br><br>Debtors. | **CASE NO. 08-29769(PGH)**<br>All Cases Jointly Administered<br><br>Chapter 7 |
| In re:<br>GINN-LA QUAIL WEST., LTD, LLLP, *et al.*,<br><br>Debtors. | (4 Cases Substantively Consolidated Under Lead Case No. 08-29769-PGH)[1]<br><br>(3 Cases Substantively Consolidated Under Lead Case No. 08-29774-PGH)[2] |
| DREW M. DILLWORTH, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD R. GINN III, *et al.*,<br><br>Defendants. | **ADV. PRO. NO. 10-03807** |

**THE LUBERT-ADLER DEFENDANTS' MOTION, INCLUDING MEMORANDUM
OF LAW, PURSUANT TO RULE 7012(b)(6) OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE TO DISMISS THE TRUSTEE'S FIRST AMENDED
COMPLAINT FOR AVOIDANCE AND RECOVERY OF
<u>FRAUDULENT/PREFERENTIAL TRANSFERS</u>**

---

[1] The "Tesoro Debtors' Estates" (Nos. 08-29769-PGH, 08-29770-PGH, 08-29772-PGH, 08-29773-PGH) are substantively consolidated into Lead Case No. 08-29769-PGH. *See* D.E. 308/309. The "Tesoro Debtors," and the last four digits of their respective tax identification numbers are: (i) Ginn-LA St. Lucie Ltd., LLLP – 5632; (ii) Ginn-St Lucie GP, LLC – 0983; (iii) Tesoro Golf Club Condo., LLC – 4385; (iv) The Tesoro Club, LLC – 1917. *See* 11 U.S.C. § 342(c)(1).

[2] The "Quail West Debtors' Estates" (Nos. 08-29774-PGH, 08-29775-PGH, and 08-29776-PGH) are substantively consolidated into Lead Case No. 08-29774-PGH. *See* D.E. 34. The "Quail West Debtors," and the last four digits of their respective tax identification numbers, are: (i) Ginn-LA Quail West Ltd., LLLP – 2397; (ii) Ginn-Quail West Beach, LLC – 9142; and (iii) Ginn-Quail West GP, LLC – 6313. *See* 11 U.S.C. § 342(c)(1).

Defendants Ira M. Lubert, Dean S. Adler, Lubert-Adler Management Co., L.P., Lubert-Adler Group IV, L.P., Lubert-Adler Real Estate Fund IV, L.P.; Lubert-Adler Real Estate Parallel Fund IV, L.P.; and Lubert-Adler Capital Real Estate Fund IV, L.P. (collectively, the "Lubert-Adler Defendants"),[3] by undersigned counsel, respectfully move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") made applicable in this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for an order dismissing the Trustee's *First Amended Complaint For Avoidance and Recovery of Fraudulent/Preferential Transfers* (the "First Amended Complaint" or "FAC").

## I.    INTRODUCTION

On December 23, 2008 (the "Petition Date"), the Debtors commenced these bankruptcy cases. On December 21, 2010, just before the expiration of the limitations period under 11 U.S.C. §546(a), the Trustee commenced this action by filing a Complaint (the "Original Complaint") whereby he sought to (a) avoid certain transfers made by the Debtors on May 6 and 7, 2008 to Ginn-LA Conduit Lender, LLC ("Conduit Lender") (collectively the "Transfers"); and (b) recover the amount of the Transfers from the Lubert-Adler Defendants and the Ginn Defendants under 11 U.S.C. §550(a)(1) as entities "for whose benefit" the Transfers were made. (ECF No. 1). There was no allegation that any of the Defendants was an initial or subsequent transferee. Nor was there any allegation that the Defendants derived any quantifiable benefit from the Transfers. Rather, the Trustee alleged in conclusory terms that, by virtue of alleged attenuated interests that the Defendants or their affiliates may have held in a development project in the Bahamas known as Ginn sur Mer, the Defendants benefitted from the Transfers.

---

[3] The other defendants are Edward R. Ginn, II, Edward R. Ginn III Revocable Trust dated September 14, 2002, ERG Management, LLC, ERG Enterprises, L.P. (collectively the "Ginn Defendants"). The Lubert-Adler Defendants and the Ginn Defendants are collectively referred to hereinafter as the "Defendants."

2

Accordingly, on February 14, 2011, the Lubert-Adler Defendants and the Ginn Defendants filed their respective motions to dismiss the Original Complaint (ECF Nos. 7 and 8). By response filed on February 22, 2011, the Trustee conceded that the Original Complaint failed to state a claim, stating he "agrees to amend his Complaint within 20 days to add further clarification as to the basis for recovery from the Defendants under §550(a)." (ECF No. 17).

On March 15, 2011, the Trustee filed his First Amended Complaint. (ECF No. 27). The new pleading still does not state a claim. Although the Trustee tinkered with some of the verbiage of the Original Complaint and added some more conclusory allegations, the material allegations and claims remain the same:

- The Trustee seeks to avoid, pursuant to 11 U.S.C. §§ 547 and 548, the Transfers to Conduit Lender. (FAC, ¶¶ 6 and 7).

- The Trustee does not allege that any of the Defendants ever received any portion of the Transfers.

- The Transfers were related to the following project entities whose assets served as collateral for a Credit Suisse loan transaction: the Debtors (developers of the Tesoro and Quail West projects), Ginn-LA Bulow Ltd., LLLP (developer of the River Club project), Ginn-LA Laurel Creek Ltd., LLLP (developer of the Laurelmor project) and Ginn-LA West End Ltd., LLLP (developer of the Ginn sur Mer project). (FAC ¶4).

- The Transfers "were made to satisfy phantom intercompany debts [to Conduit Lender] created for internal accounting purposes...," which purported debts "resulted from a lack of Tesoro and Quail West lot and units sales compared to Ginn sur Mer lot and unit sales..." (FAC ¶¶10, 12, 30, and 37).

- The Transfers were made to Conduit Lender for the benefit of the Defendants who allegedly held, either directly or indirectly, interests in the Ginn sur Mer development. (FAC ¶¶16 and 47).

- The Trustee seeks recovery against the Defendants because each is "an entity for whose benefit a transfer was made within the meaning of 11 U.S.C. § 550(a)(1)." (FAC ¶¶ 63 and 77).

The Trustee does not allege that the Lubert-Adler Defendants received any "quantifiable benefit or one bearing the necessary correspondence to the value of the property transferred or received." *Reily v. Kapila* (*Int'l Mgmt. Assoc.*), 399 F.3d 1288, 1293 (11th Cir. 2005) (citing *Mack v. Newton,* 737 F.2d 1343, 1359-60 (5th Cir. 1984)). He only offers a conclusory allegation that "but for the Tesoro and Quail West Payments, the investors in Ginn sur Mer would have been required to inject additional capital into the Development, as equity or debt, in an amount at least equivalent to the payments, in order to sustain the Development." (FAC ¶48).

In other words, the Trustee's claim against the Lubert-Adler Defendants is based solely on their alleged "status" as direct or indirect interest holders in the Ginn sur Mer project.[4] The Trustee's contrived and sweeping "status based" application of "the entity for whose benefit" language contained in 11 U.S.C. § 550(a)(1) to the Lubert-Adler Defendants fails as a matter of

---

[4] Although the Trustee asserts a right to recovery against the Lubert-Adler Defendants based solely on their alleged equity interests in the Ginn Sur Mer development, as to some of the Lubert-Adler Defendants the Trustee does not even allege that they held such equity interests. The only Lubert-Adler Defendants that the Trustee pleads held equity interests in Ginn-LA West End Ltd., LLLP (the owner of the Ginn Sur Mer Development) were ERG Enterprises, Inc, with a 20% interest (FAC ¶ 23) and Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. (collectively, the "Lubert-Adler Fund IV Entities") with a collective 80% interest (FAC ¶¶ 25 and 26). In other words, there are no allegations that defendants Dean Adler, Ira Lubert, Lubert-Adler Management Co., L.P. or Lubert-Adler Group IV, L.P. were equity owners of the Ginn Sur Mer Development. As to these defendants, the Trustee merely alleges that: Ira Lubert and Dean Adler "are individuals that [*sic*] co-founded and co-owned Lubert-Adler Management Co., L.P., and the affiliated Lubert-Adler "Group" and "Fund" entities." (FAC ¶ 24); and Lubert-Adler Group IV, L.P. "serves as the General partner of – and held a carried ownership interest in ...the Lubert-Adler Fund IV Entities." (FAC ¶ 25).

4

law. Since the Trustee has now failed twice to state a claim, the First Amended Complaint should be dismissed with prejudice.

## II.     THE MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6), made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, is the proper means for challenging a complaint's legal sufficiency. The Rule 12(b)(6) standard was refined in two United States Supreme Court decisions, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S.__, 129 S. Ct. 1937 (2009). *Twombly* and *Iqbal* require, among other things, a two-part analysis of the complaint under Rule 12(b)(6): <u>first</u>, all legal conclusions and formulaic recitations of claims must be stripped away and discarded; and, <u>second</u>, the remaining factual averments must be examined to determine if they are sufficient to <u>plausibly</u> state the claim. *See also Mukamal v. Bakes*, 378 Fed. Appx. 890, 896 (11th Cir. Apr. 30, 2010). The mere possibility "that a plaintiff might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge. *Twombly,* 550 U.S. at 561, 127 S.Ct. 1955.

## III.     ARGUMENT

Assuming *arguendo* that the Trustee can succeed on his avoidance claims, he must then establish that he is entitled to a recovery under 11 U.S.C. § 550(a). This section, however, prescribes that only certain parties can be held liable for avoided transfers, as follows:

> **(a)** … to the extent that a transfer is avoided under section … 547, 548…… the trustee may recover…from---
>
> **(1)** the initial transferee of such transfer or *the entity for whose benefit such transfer was made*; or
>
> **(2)** any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (italics added).

In this case, the Trustee does not allege that the Lubert-Adler Defendants are either initial or subsequent transferees of the Transfers sought to be avoided. Rather, the Trustee seeks recovery under section 550(a)(1), claiming that the Lubert-Adler Defendants were entities for whose benefit the challenged transfers were made. (FAC, ¶¶ 63 and 77). For the reasons discussed below, the Trustee has failed to plead a "for the benefit of" claim under 11 U.S.C. § 550(a)(1).

### A. The Legal Standard

Section 550(a) distinguishes between "transferees" and an "entity for whose benefit [the initial transfer] was made." The phrase "entity for whose benefit such transfer was made" does "not simply reference the next pair of hands." *Faulkner v. Kornman* (*In re the Heritage Org., LLC*), 413 B.R. 438, 495 (Bankr. N.D. Tex. 2009) (citations omitted). Rather, it refers to entities that benefit from the initial transfer itself, "without ever holding the funds." *Id.* "The benefit must derive *directly* from the transfer, not from the use to which it is put by the transferee... someone who receives the money later on is not an 'entity for whose benefit such transfer was made.'" *Turner v. Phoenix Fin., LLC* (*In re Imageset, Inc.*), 299 B.R. 709, 718 (Bankr. D. Me. 2003) (quoting *Bonded Fin. Services Inc. v. European Am. Bank (In re Bonded Fin. Services Inc.)*, 838 F.2d 890, 896 (7th Cir. 1988)) (italics added); *see also 3V Capital Master Fund Ltd. v. Official Comm. of Unsecured Creditors of Tousa, Inc. (In re Tousa, Inc.),* No. 10-cv-60016-ASG, slip op. D.E. 31 at 99-100 (S.D. Fla. Feb. 11, 2011). Moreover, an entity for whose benefit the transfer was made must receive a "quantifiable benefit or one bearing the necessary

6

correspondence to the value of the property transferred or received." *Int'l Mgmt. Assoc.,* 399 F.3d at 1293 (citing *Mack v. Newton,* 737 F.2d at 1359-60).⁵

In *International Management,* the Eleventh Circuit addressed the potential liability under section 550(a)(1) of a non-transferee equity holder and refused to impose section 550(a)(1) liability based on the defendant's ownership status in an entity. Specifically, the Eleventh Circuit examined a transaction where a debtor entity redeemed shares of a company for less than fair value, leaving only one remaining shareholder. *Id.* at 1291-92. Although no property flowed directly to the remaining shareholder, the trustee sought recovery against him, contending that by reason of the redemption, the remaining shareholder obtained 100% control of the assets of the company. *Id.* at 1292. The Court held that "this sort of unquantifiable advantage is not the sort of 'benefit' contemplated by 11 U.S.C. §550(a)." *Id.* The Court went on to state that the fact that the remaining shareholder "attained complete control over the debtors' assets does not give rise to a quantifiable benefit or one bearing the 'necessary correspondence to the value of the property transferred or received.'" *Id.* (citing *Mack v. Newton,* 737 F.2d at 1359-1360).

In rendering its decision, the Eleventh Circuit emphasized the importance of adhering to the "benefit" language contained in 11 U.S.C. § 550 (a). The Court distinguished *International Management* from the case of *In re B.S. Livingston & Co., Inc.*, 186 B.R. 841 (Bankr. D.N.J. 1995), in which the court imposed section 550(a) liability on controlling shareholders and principals of the debtor who had sold the core of a business to a third party company in exchange for lucrative positions with that company. The Eleventh Circuit stated:

> Although Livingston may present a "benefit" that is on the <u>far edge of qualification</u> under 11 U.S.C. § 550(a), <u>there is no obvious violence to the language</u> in stating that the benefit of a lucrative

---
⁵ "The paradigm case of a benefit under §550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor." *Int'l Mgmt. Assoc.,* 399 F.3d at 1292-93. No such allegation is or could be asserted in this case.

7

> position, like the benefit experienced by a guarantor, may be considered direct, ascertainable and quantifiable, unlike the "benefit" to [the remaining shareholder here].

*Int'l Mgmt. Assoc.,* 399 F.3d at 1293 (underlining added).

Other courts have also refused to impose section 550(a)(1) liability based on a defendant's ownership status in an entity. For instance, in *Mack v. Newton, supra,* a case cited as positive authority by the Eleventh Circuit, the Fifth Circuit rejected a trustee's allegation that principals in a partnership had received a "benefit" from auctioning off cattle and using the proceeds to operate their dairy enterprise as a going concern. *Mack v. Newton,* 737 F.2d at 1359-1360. The Fifth Circuit held that such a benefit was too broad to warrant recovery insofar as it was an "incidental, unquantifiable, and remote benefit bearing no necessary correspondence to the value of the property transferred or received." *Id.*

Similarly, in *Hansen v. 5841 Bldg. Corp., (In re Hansen)*, 341 B.R. 638, 645 (Bankr. N.D. Ill. 2006), the bankruptcy court refused to impose section 550(a) liability upon the president/majority shareholder of the transferee companies. The debtor had transferred money to one company, which then transferred the money to a second company, which then used the transferred funds as operating capital. The trustee brought suit against both companies, as well as an individual who was a majority shareholder and president of both companies. The trustee alleged that the individual defendant's shareholder and presidential status was itself sufficient to establish that he had benefitted from the transfers. The court granted summary judgment in favor of the individual defendant. In rendering its decision, the *Hansen* court criticized prior court decisions that had authorized recovery based on one's "mere status as an officer or shareholder of a corporate transferee," pointing out that those cases "ignore the fundamental nature of corporations." *Id.* at 645. In that regard, the *Hansen* court wrote:

> Nothing in section 550(a)(1) indicates that corporate form can be thrust aside and all voidable transfers to a corporation recovered from its shareholders on the mere assumption that shareholders somehow automatically "benefit" from such transfers. If corporate existence is to be observed, transfers cannot be recovered even from a shareholder who by virtue of his majority ownership ostensibly "controls" the corporation. Something more than mere status as a shareholder, officer, or director must be shown.

*Id.* at 645 (internal citations omitted). The decisions criticized in *Hansen* included *Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655, 665-66 (N.D. Ill. 1991); *Nickless v. Golub (In re Worcester Quality Foods, Inc.)*, 152 B.R. 394, 404 (Bankr. D. Mass. 1993) and *Balti v. Lynch (In re McCook),* 319 B.R. 570, 590 (Bankr. N.D. Ill 2005). We found no cases from the Eleventh Circuit or the District or Bankruptcy Courts of this Circuit that favorably cited these cases. In fact, the Eleventh Circuit, in *Munford v. Valuation Research Corp. (In re Munford, Inc.),* 98 F.3d 604, 610 n.4 (11th Cir. 1996), specifically rejected the *Wieboldt* decision, *albeit* in the context of a case relating to whether an LBO payment could qualify as a settlement payment under section 546(e).

Likewise, in *In re Imageset, Inc.*, the bankruptcy court refused to impose liability on the defendants based on their status as members of a limited liability company that received transfers from the debtor. 299 B.R. at 718. The trustee had alleged, *inter alia*, that the defendants' membership status and right to receive distributions from the LLC, in and of itself, made them "entities for whose benefit such transfers were made" under section 550(a)(1). *Id.* at 718. The *Imageset* court rejected the trustee's "entities for whose benefit" theory, writing:

> While the logic of Turner's [the chapter 7 trustee] position is conspicuous in its simplicity, it also proves too much. If your interest in an entity makes you strictly liable (jointly and severally with the entity) under §550 every time the entity receives a fraudulent conveyance, wouldn't the same logic extend to every shareholder of a corporation to the same degree?

*Id. at* 718.

B.  **Application Of The Law To The Facts Of This Case**

The language of Bankruptcy Code makes plain that there is a limited universe of entities from whom recovery for an avoidable transfer may be obtained. Pursuant to 11 U.S.C. § 550(a)(1), recovery may be obtained from an initial transferee and an entity for whose benefit the initial transfer was made. Pursuant to 11 U.S.C. §550(a)(2), recovery may be obtained from any immediate or mediate transferee.

The Trustee does not allege that the Lubert-Adler Defendants are initial transferees or immediate or mediate transferees of the initial transferee. Rather, the Trustee seeks to hold the Lubert-Adler Defendants liable under 11 U.S.C. § 550(a)(1), solely on the basis that they were entities for whose benefit the initial transfer was made. [FAC, ¶¶ 16 and 47].[6] The Trustee, however, has offered only insufficient or bald allegations in that regard which are "not entitled to be assumed true." *Iqbal,* 129 S.Ct. at 1951.

The Trustee does not allege what became of the funds transferred to Conduit Lender, let alone that that they were subsequently transferred to Ginn-LA West End Ltd., LLLP, the owner of the Ginn sur Mer development or "other corporate entities in the corporate structure pertaining to the Ginn sur Mer Development" (FAC, ¶ 44).[7] Nor does the Trustee allege that the funds

---

[6] As discussed above in footnote 4, the Trustee does not even allege the defendants Ira M. Lubert, Dean S. Adler, Lubert Adler Management Co., L.P. or Lubert-Adler Group IV, L.P. were equity owners of the Ginn sur Mer Development.

[7] The Trustee belatedly acknowledges that he is not sure whether Conduit Lender or "other corporate entities in the corporate structure pertaining to the Ginn sur Mer Development" were the initial transferees. (FAC, ¶ 44). Regardless, the distinction is irrelevant. Under either scenario, the Trustee still could not plead a claim because, at best, the only possible "benefit" to the Defendants would derive from the subsequent use of the transferred funds by a transferee to pay for Ginn sur Mer development costs (which the Trustee has not even alleged) and *not* from the initial transfers themselves. Moreover, it is unseemly to say the least that the Trustee alleges that the Defendants are to blame for his lack of knowledge. (FAC ¶¶ 43-44). The Trustee knew about the Transfers for almost two years prior to the filing of this action because shortly after the Petition Date, on January 28, 2009, the lead Quail West and Tesoro Debtors listed the Transfers in their amended responses to Question No. 3 of their Statement of Financial Affairs filed on January 28, 2009. (FAC, ¶¶ 6 and 7) (ECF No. 92 of the Case No. 08-29769; ECF No. 23 of the

10

were ultimately used to fund Ginn sur Mer development costs. But even had the Trustee alleged that the transferred funds were ultimately used to fund Ginn sur Mer development costs, he still would not have been able to state a "for the benefit of" claim against the Lubert-Adler Defendants under 11 U.S.C. §550(a)(1). This is because the Trustee merely alleges in conclusory terms that if the transferred funds were ultimately used to fund development costs for Ginn sur Mer, the Defendants, as alleged equity holders, would be spared the cost of injecting additional capital into the project at some future time. (FAC ¶ 46). This alleged benefit is, at best, a remote benefit that would have flowed from the subsequent use of the funds for development costs, and not from the initial transfer to Conduit Lender or "other entities in the corporate structure pertaining to the Ginn sur Mer Development." (FAC ¶ 44).

As discussed above, section 550(a)(1) does not permit recovery from an entity who derived a benefit from anything other than an initial transfer. 11 U.S.C. §550(a)(1). *See In re Tousa, Inc.,* No. 10-cv-60016-ASG, slip op. at 99 ("Section 550(a) explicitly links the initial transferee with the entity 'for whose benefit' the initial transfer was made, 'only a person (or entity) who receives a benefit from the initial transfer can be an entity for whose benefit the initial transfer was made.'") (quoting *Bonded Fin. Services Inc.,* 838 F.2d at 896)); *see also In re the Heritage Org., LLC,* 413 B.R. at 495. Here, the Trustee does not allege any predicate benefit that flowed directly to the Lubert-Adler Defendants from the Transfers. Instead, the Trustee alleges that the Lubert-Adler defendants, as direct or indirect investors, ultimately sustained savings to the extent there was any <u>post-initial transfer</u> expenditure of the funds for Ginn sur Mer development costs. Thus, even had the Trustee pleaded that the transferred funds were used to

---

Case No. 08-29774). Despite the Trustee's broad powers under Rule 2004 of the Federal Rules of Bankruptcy Procedure to conduct an examination regarding the Transfers that had clearly been clearly listed in the Debtors' Statements of Financial Affairs, he chose not to do so. Instead he instituted this action without doing any factual investigation. The Trustee made no requests from the Defendants for information relating to the Transfers until

11

fund those costs, such <u>post-initial transfer</u> use of the funds could not support a section 550(a)(1)(a) "for the benefit of" claim. "The benefit must derive *directly* from the transfer, not from the use to which it is put by the transferee...." *Phoenix Fin., LLC* (*In re Imageset, Inc.*), 299 B.R. at 718 (quoting *Bonded Fin. Services Inc.*, 838 F.2d at 896.

Further, the Trustee must allege a benefit that is "quantifiable" or bears a "necessary correspondence to the value of the property transferred or received." *Int'l Mgmt. Assoc.,* 399 F.3d at 1293; *Mack v. Newton,* 737 F.2d at 1359-1360. The Trustee has not done so. Here, the Trustee has not identified any direct benefit that flowed to the defendants from the initial transfers, let alone one that was quantifiable or corresponded to the amount of the Transfers. In *International Management*, the Eleventh Circuit commented that the "lucrative positions" received by the individual defendants in *Livingston* were "on the far edge of qualification under 11 U.S.C. § 550(a)." *Int'l Mgmt. Assoc.,* 399 F.3d at 1293. Here, the Trustee has identified no benefit, let alone one on the far edge of qualification. The construct urged by the Trustee gives "violence to the language" of the statute. *Id.* "For the benefit of" recovery cannot be awarded based on a defendant's equity status alone. *Id.*, *In re Hansen*, 341 B.R. at 645, *In re Imageset, Inc.*, 299 B.R. at 718.

---

serving discovery requests three weeks **after** the filing of this action. On March 29, 2011, this Court granted the Defendants Motion For Protective Order relating to those discovery requests.

## IV. CONCLUSION

For all the reasons set forth above, the First Amended Complaint should be dismissed with prejudice.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on the 30th day of March, 2011 upon those parties registered to receive Notices of Electronic Filing in this case as indicated on the attached **Service List (Exhibit A)**; and regular U.S. mail upon those parties identified on the attached **Service List (Exhibit "B")**.

Dated: March 30, 2011

Respectfully submitted,

BERGER SINGERMAN, P.A.
Counsel to Ira M. Lubert, Dean S. Adler
Lubert-Adler Management Co., L.P.,
Lubert-Adler Group IV, L.P., Lubert-Adler
Real Estate Fund IV, L.P., Lubert-Adler
Real Estate Parallel Fund IV, L.P., Lubert-
Adler Capital Real Estate Fund IV, L.P.,
200 South Biscayne Boulevard
Suite 1000
Miami, Florida  33131
(305) 755-9500
Fax: (305) 714-4340

By: *s/ Paul Steven Singerman*
Paul Steven Singerman
Fla. Bar No. 378860
singerman@bergersingerman.com

- AND -

KLEHR HARRISON HARVEY
BRANZBURG LLP
William A. Harvey
Rona J. Rosen
1835 Market Street
Philadelphia, PA  191103
(215) 568-6060
Fax: (215) 568-6603
*Admitted pro hac vice*

**EXHIBIT "A"**
**SERVICE LIST**

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
**Harold D. Moorefield, Jr.**
Email: *hmoorefield@stearnsweaver.com*
**Matthew W. Buttrick**
Email: *mbuttrick@stearnsweaver.com*
Museum Tower, Suite 2200
150 West Flagler Street, Suite 2200
Miami, FL  33130
Telephone: (305) 789-3200
Facsimile:  (305) 789-3395
*Counsel to Trustee Dillworth*

**SMITH MOORE LEATHERWOOD LLP**
**Lynn F. Chandler**
Email: *lynn.chandler@smithmoorelaw.com*
525 North Tryon Street
Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 384-2600
Facsimile: (704) 384-2800
*Counsel to the Ginn Defendants*

**KLEHR HARRISON HARVEY BRANZBURG LLP**
**William A. Harvey, Esq.**
Email: *wharvey@klehr.com*
**Rona J. Rosen, Esq.**
Email: *rrosen@klehr.com*
1835 Market Street, Suite 1400
Philadelphia, PA 19103
*Counsel to Lubert-Adler Defendant*

**KOZYAK TROPIN & THROCKMORTON, P.A.**
**Charles W. Throckmorton**
(Florida Bar No. 286192)
Email: *cwt@kttlaw.com*
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
Telephone: (305) 377-1800
Facsimile: (305) 372-3508
*Counsel to the Ginn Defendants*

## EXHIBIT "B"
## SERVICE LIST

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
**Harold D. Moorefield, Jr., Esq.**
**Matthew W. Buttrick, Esq.**
**Andrew E. Stearns, Esq.**
**Eugene E. Stearns**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL  33130
Telephone: (305) 789-3200
Facsimile:  (305) 789-3395
*Counsel to Trustee Dillworth*

**KLEHR HARRISON HARVEY BRANZBURG LLP**
**William A. Harvey, Esq.**
**Rona J. Rosen, Esq.**
1835 Market Street, Suite 1400
Philadelphia, PA 19103
*Counsel to Lubert-Adler Defendant*

**Jonathan P. Heyl, Esq.**
**Smith Moore Leatherwood, LLP**
525 N. Tryon Street,  Suite 1400
Charlotte, NC  28202

**SMITH MOORE LEATHERWOOD LLP**
**Lynn F. Chandler, Esq.**
525 North Tryon Street
Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 384-2600
Facsimile: (704) 384-2800
*Counsel to the Ginn Defendants*

**KOZYAK TROPIN & THROCKMORTON, P.A.**
**Charles W. Throckmorton, Esq.**
(Florida Bar No. 286192)
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
Telephone: (305) 377-1800
Facsimile: (305) 372-3508
*Counsel to the Ginn Defendants*

3577618-1