UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**West Palm Beach Division**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br>GINN-LA ST. LUCIE LTD., LLLP, *et al.*,<br>　　　　　　Debtors.<br>_____/ | **CASE NO. 08-29769-PGH**<br>All Cases Jointly Administered<br><br>Chapter 7<br><br>(4 Cases Substantively Consolidated Under Lead Case No. 08-29769-PGH)[1] |
| In re:<br>GINN-LA QUAIL WEST LTD., LLLP, *et al.*,<br>　　　　　　Debtors.<br>_____/ | (3 Cases Substantively Consolidated Under Lead Case No. 08-29774-PGH)[2] |
| DREW M DILLWORTH, Chapter 7 Trustee,<br>　　　　　　Plaintiff,<br>vs.<br>EDWARD R. GINN III, et al.,<br>　　　　　　Defendants.<br>_____/ | **ADV. PRO. NO. 10-03807-PGH** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
THE "GINN" AND "LUBERT-ADLER" DEFENDANTS'
MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Drew M. Dillworth ("Trustee Dillworth"), in his capacity as Chapter 7 Trustee for the Tesoro and Quail West Debtors' Estates, hereby files this memorandum in opposition to the Ginn and Lubert-Adler Defendants' Motions to Dismiss [ECF Nos. 40, 42].

---

[1] The "Tesoro Debtors' Estates" (Nos. 08-29769-PGH, 08-29770-PGH, 08-29772-PGH, and 08-29773-PGH) are substantively consolidated into Lead Case No. 08-29769-PGH. *See* Order [D.E. 308/309]. The "Tesoro Debtors," and the last four digits of their respective tax identification numbers, are: (i) Ginn-LA St. Lucie Ltd., LLLP – 5632; (ii) Ginn-St Lucie GP, LLC – 0983; (iii) Tesoro Golf Club Condo., LLC – 4385; and (iv) The Tesoro Club, LLC – 1917. *See* 11 U.S.C. § 342(c)(1).

[2] The "Quail West Debtors' Estates" (Nos. 08-29774-PGH, 08-29775-PGH, and 08-29776-PGH) are substantively consolidated into Lead Case No. 08-29774-PGH. *See* Order [D.E. 34]. The "Quail West Debtors," and the last four digits of their respective tax identification numbers, are: (i) Ginn-LA Quail West Ltd., LLLP – 2397; (ii) Ginn-Quail West Beach, LLC – 9142; and (iii) Ginn-Quail West GP, LLC – 6313. *See* 11 U.S.C. § 342(c)(1).

## BACKGROUND

1.      Through this adversary proceeding, Trustee Dillworth seeks to avoid and recover for fraudulent or preferential transfers of Tesoro and Quail West Debtor property made two years after the Credit Suisse loan refinancing of the Tesoro, Quail West, River Club / Gardens, Laurelmor, and Ginn sur Mer Developments.  *See* First Amended Complaint ("FAC") [ECF No. 27], ¶¶ 1, 4.

2.      Lead Debtors Ginn-LA St. Lucie Ltd., LLLP and Ginn-LA Quail West Ltd., LLLP listed the transfers at issue in their Statements of Financial Affairs, in response to Question No. 3, which requires each debtor to identify "all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders." The pertinent portions of their responses to Question No. 3 read as follows:

| Debtor | Name and Address of Creditor and Relationship to Debtor | Date of Payment | Amount Paid |
|---|---|---|---|
| Ginn-LA St. Lucie Ltd., LLLP | Ginn-LA Conduit Lender, LLC [sic - s/b "Inc."]<br><br>215 Celebration Place<br>Suite 200<br>Celebration, FL 34747<br><br>Affiliate | 5/7/2008<br><br>*These payments were made from LLLP to Conduit Lender in connection with the Credit Suisse lead secured loans and were utilized, and allocated, to projects subject to the Credit Suisse secfured [sic] loans. | $31,947,006.46 |
| Ginn-LA Quail West Ltd., LLLP | Ginn-LA Conduit Lender, LLC [sic - s/b "Inc."]<br><br>215 Celebration Place<br>Suite 200<br>Celebration, FL 34747<br><br>Affiliate | 5/6/2008<br><br>*These payments were made from LLLP to Conduit Lender in connection with the Credit Suisse lead secured loans and were utilized, and allocated, to projects subject to the Credit Suisse secured loans. | $17,509,699.21 |

FAC, ¶¶ 6-7 (quoting Case No. 08-29769, ECF No. 92, p. 28; No. 08-29774, ECF No. 23, p. 22).

3.      The purported "creditor" – insider Ginn-LA Conduit Lender – was a shell company formed in connection with the Credit Suisse loan refinancing transaction, which was inserted into the corporate ownership structure pertaining to the Ginn sur Mer Development.  FAC, ¶¶ 8-9.

-2-

4.      According to Ginn and Lubert-Adler records, the Lead Debtors' respective payments to Ginn-LA Conduit Lender in May of 2008 were made to satisfy phantom "intercompany debts" created for "internal accounting purposes" pursuant to the following accounting protocol:

> From Credit Suisse's perspective, there will be one common financing secured by a lien for the full amount of the aggregate borrowing against each of the Developments. Functionally speaking, this means that cash generated by on[e] Development in a particular quarter could be used, in its entirety, to repay the Credit Suisse loans, without regard to the fact that no other Development produced any revenues – or repaid any of the Credit Suisse debt – in that quarter.
>
> However, the [Ginn / Lubert-Adler] JV intends, for its own internal accounting purposes, to treat each Development individually, such that each will be deemed to have financial responsibility only for its allocable share of the overall borrowing. That allocable share will be directly related to the percentage of loan proceeds which is allocated, at closing, on account of each Development. In the event that a particular Development contributes disproportionately to the repayment of the loans, the "excess" payment made to Credit Suisse by such Development shall be deemed to have been made for the benefit of the other Developments and, as such, will be treated, for JV accounting purposes, as an interest-bearing loan to such other Developments (in ratable proportion to the imputed benefit conferred upon each such other Development).
>
> *In essence, the JV will be keeping a running account of intercompany payables and receivables between the different Developments. However, there can be no assurance that the "debtor" Developments will eventually be able to fully repay their "debts" to the "creditor" Developments, and, in such event, the "creditor" Developments, though successful in their own right, will ultimately be dependent upon the eventual success of the "debtor" Developments to insure that the full profit actually earned, in real time, by such "creditor" Developments is in fact received by the investors in such Developments. In practical terms, the investors in the successful "creditor" Developments could end up with investment risk attributable to the "debtor" Developments.*

FAC, ¶ 10 (quoting "Memo." from Lubert-Adler to Fund III & IV Advisory Boards, 06/02/06, LA043327 - 043337) (emphasis added) (copy attached as Exhibit "1").

5.      In the words of one of the attorneys involved, this internal accounting protocol was "intended to be somewhat like accounting between separate divisions of a single company," *i.e.*, the "debt" was to be "view[ed] as *notional* rather than *real* debt." FAC, ¶ 11 (quoting E-mail, C. Brewer to J. Klumph, 06/03/06, MMMTQW01_030343 - 030344) (Exhibit "2").

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

6. Following the consummation of the Credit Suisse loan refinancing transaction, the Lead Debtors generated insufficient lot and unit sales cash to cover their allocable "shares" of the overall borrowing. FAC, ¶ 12.

7. The Ginn sur Mer entities did better, though that Development was by no means "successful in its own right," either. FAC, ¶ 12.

8. As a consequence, the Lead Debtors were deemed "for internal accounting purposes" to have "borrowed" sums from the Ginn sur Mer Development in an amount equal to the latter Development's "excess" payments on the loans. FAC, ¶ 12.

9. In reality, those purported "debts" were merely "*notional* rather than real debt[s]," *i.e.*, "purely speculative," "theoretical," "existing in thought or mind only," "imaginary." FAC, ¶ 13 (quoting Shorter Oxford English Dictionary; Merriam-Webster Online Dictionary).

10. Nevertheless, in May 2008, the Lead Debtors transferred a total of $49,456,705.67 to Ginn-LA Conduit Lender on account of those "debts" (the "Tesoro" and "Quail West Payments"), "to offset 'investment risk attributable to [Tesoro / Quail West]' as a result of cross collateralization, and 'to insure that the full profit actually earned, in real time, by [Ginn sur Mer] [wa]s in fact received by the investors in such Development[].'" FAC, ¶¶ 29-30, 36-37, 45-48 (quoting Ex. "1").

11. Significantly, the Lead Debtors made the Tesoro and Quail West Payments less than a week after entering into a Joint Defense, Common Interest, and Information Sharing Agreement which this Court has observed "plainly recite[d] [an] 'anticipation' of a possible bankruptcy filing," and "whose purpose [wa]s to protect [the] debtor's adverse insider's prepetition communications[,] to shield evidence of their wrongdoing." FAC ¶¶ 31, 38 (the JDA was dated as of May 1, 2008) (quoting Order on Motion to Compel, Case No. 08-29769-PGH, ECF No. 572, pp. 12-13).

12. By that time, the Defendants had essentially "written off" Tesoro and Quail West, and were focusing their efforts on sustaining Ginn sur Mer, which was also struggling but was viewed internally as the Development with the greatest potential for profit. FAC, ¶¶ 32, 39.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

Hence, the decision to shift funds from Tesoro and Quail West to Ginn sur Mer, for the benefit of the investors in that Development. FAC, ¶¶ 32, 39, 45-47.

13.     Trustee Dillworth alleges that the Tesoro and Quail West Payments are avoidable as fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A) & 548(a)(1)(B), or, in the alternative, as preferential transfers pursuant to 11 U.S.C. § 547(b). FAC, ¶ 14, 15, 52, 57, 61, 66, 70, 75.

14.     The Defendants, notably, do *not* challenge the "sufficiency" of *those* allegations or the underlying factual predicate. For present purposes, they concede it must be accepted as true that:

- The Lead Debtors transferred nearly $50,000,000 of Lead Debtor property to an insider, with actual intent to hinder, delay, or defraud entities to which they were or thereafter became indebted;

- The Lead Debtors were insolvent at the time the payments were made, and received no value therefor – they merely received the "satisfaction" of "notional rather than real debts"; and

- Alternatively, if the Lead Debtors are deemed to have made the payments in satisfaction of "real debts," the payments would constitute payments to or for the benefit of an insider-creditor, made for or on account of an antecedent debt owed by the Lead Debtors before said payments were made, while the Lead Debtors were insolvent, which enabled said insider-creditor to receive more than it would have received if the payment had not been made and it received payment of such debt to the extent provided under the Bankruptcy Code.

FAC, ¶¶ 33-34, 40-41, 51, 54-56, 59-60, 65, 68-70, 73-74.

15.     Rather, the Defendants challenge only the sufficiency of the claims for recovery, which assert that – at a minimum – the Defendants were entities "for whose benefit" the payments at issue were made within the meaning of 11 U.S.C. § 550(a)(1). FAC, ¶¶ 20-26, 43-49, 63, 77. According to the Defendants, the FAC contains only "insufficient or bald allegations in that regard," and fails to allege the kind of "quantifiable" benefit necessary to support "for whose benefit" liability under 11 U.S.C. § 550(a)(1). Ginn Defendants' Motion to Dismiss ("Ginn Motion"), pp. 4-8; Lubert-Adler Defendants' Motion to Dismiss ("L.A. Motion"), pp. 10-12.

-5-

## ARGUMENT

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and its "sister" decision, *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court adopted "a new formulation" of the "test" to be applied in evaluating motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6):

> In *Twombly*, the Supreme Court distinguished "plausible" claims from allegations that were merely "conceivable," and stated that the Court "[did] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." [550 U.S.] at 570, 127 S. Ct. at 1974. The Supreme Court explained that a complaint "does not need detailed factual allegations," but the allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1964-65. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556, 127 S. Ct. at 1965[.]
>
> [I]n *Iqbal* the Supreme Court clarified that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [129 S. Ct.] at 1949; *see also Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) ("The Court has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.")[.]

*Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).

Applying this new standard, the First Amended Complaint states a facially "plausible" claim against the Defendants as transfer "beneficiaries." It alleges facts establishing that:

A. The intended "purpose" of the transfers was to "benefit" the investors in the "more successful" Ginn sur Mer Development";

B. The "benefit" derived by the investors in the Ginn sur Mer Development was a "quantifiable" one corresponding to the value of the property transferred; and

C. Each of the Defendants was an investor in the Ginn sur Mer Development, either directly or through affiliated entities they controlled.

FAC, ¶¶ 10-11, 20-26, 29-32, 36-39, 45-49.

-6-

### A. The First Amended Complaint Alleges Facts Establishing That The Intended "Purpose" Of The Transfers Was To Benefit Investors In The "More Successful" Ginn sur Mer Development

Contrary to the Defendants' suggestion, the claims asserted against them in this proceeding are *not* based on "mere[] 'naked assertion[s]' masquerading as . . . factual allegation[s]," or a mere *incidental* "benefit" obtained "by virtue of [their] owning an equity interest" in the "more successful" Ginn sur Mer Development. Ginn Motion, pp. 3, 8; L.A. Motion, pp. 10-12. Quoting from the Defendants' *own* internal documents, the First Amended Complaint alleges that the transfers at issue were made pursuant to an internal accounting protocol which was put in place for "the [express] *purpose* of . . . protect[ing] and benefit[ting] investors in the more successful Developments." FAC, ¶¶ 45-46 (emphasis added).

In *In re Air Conditioning, Inc. (American Bank of Martin County v. Leasing Serv. Corp.)*, 845 F.2d 293 (11th Cir. 1988), the Eleventh Circuit's seminal decision on indirect transfers, the Court confronted an analogous situation. In that case, the debtor had pledged a security interest in a certificate of deposit to a bank, in order to induce the bank to issue a letter of credit to a creditor. The central issue in the appeal was whether the transfer of that security interest was made "for the benefit" of the creditor within the meaning of 11 U.S.C. § 547(b)(1), and could be recovered from the creditor as the entity "for whose benefit" such transfer was made pursuant to § 550(a)(1)? The Court answered both parts of that question in the affirmative, finding the "*purpose*" of transfer was to "indirectly secure[] payment" of the debt owed the creditor. *Id.* at 296-97, 299.

The same result follows here. Unlike the shareholder cases Defendants purport to rely upon, the transfer "benefit" alleged in this case was not a mere incidental side-effect. It was by design. The "*purpose*" of the transfers "[was] to 'benefit' the investors in the Ginn sur Mer Development," by, among other things, "offset[ting] 'investment risk'" resulting from cross-collateralization, and "'insur[ing] that the full profit actually earned, in real time, by [Ginn sur Mer] [wa]s in fact *received by the investors* in such Development[].'" FAC, ¶¶ 45-47 (quoting Ex. 1)(emphasis added).

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

This is not a case where recovery is sought "based on a defendant's equity status *alone*." L.A. Motion, p. 12 (emphasis added).

**B.    The First Amended Complaint Alleges Facts Establishing That The "Benefit" Derived By The Investors In Ginn sur Mer Was A "Quantifiable Benefit" Corresponding To The Value Of The Property Transferred And Received**

According to the Defendants, in order for the First Amended Complaint to state a claim upon which relief may be granted, "[it] must plead facts (not naked conclusions) establishing that the Defendants derived a 'quantifiable benefit or one bearing the necessary correspondence to the value of the property transferred or received.'" Ginn Motion, pp. 5-6; L.A. Motion, pp. 4, 12 (quoting *In re Int'l Mgt. Assocs., Inc.*, 399 F.3d 1288, 1294 (11th Cir. 2005)).

We respectfully submit that it does. The First Amended Complaint specifically alleges, among other things, that:

> [B]ut for the Tesoro and Quail West Payments, the investors in Ginn sur Mer would have been *required* to inject *additional capital* into that Development, as equity or debt, *in an amount at least equivalent to the payments*, in order to sustain the Development.

FAC, ¶ 48 (emphasis added).

That is not a mere "naked conclusion." It is a specific factual allegation predicated on documents produced in connection with these bankruptcy proceedings.

Nor is there any merit to the Defendants' related argument – made in passing – that the transfer "benefit" alleged in this case is insufficient to support "for whose benefit" liability because it did not "derive *directly* from the transfer," it derived "from the *use* to which it [wa]s put." Ginn Motion, pp.4-5 (first emphasis in original; second added); L.A. Motion, pp. 6, 11-12 (same). In *In re Air Conditioning, Inc.*, referenced above, the Eleventh Circuit expressly affirmed a judgment imposing "for whose benefit" liability where the "benefit" derived from the "use" to which the initial transfer was put; namely, the subsequent transfer of a letter of credit to defendant LSC. The Eleventh Circuit observed that the Bankruptcy Code "explicitly provides for this," stating:

-8-

> [T]he district court [also] correctly allowed the trustee to recover from LSC the property transferred: the certificate of deposit. The Bankruptcy Code *explicitly provides for this* by allowing the trustee to recover a preferential transfer from "the initial transferee of such transfer *or the entity for whose benefit such transfer was made*[.]" 11 U.S.C. § 550(a)(1). . . .

*In re Air Conditioning, Inc.*, 845 F.2d at 299 (first emphasis added; second in original).

Indeed, while the Defendants seek to distinguish this case from the "paradigm" involving a "guarantor," *see* Ginn Motion, p. 7; L.A. Motion, p. 7 n. 5; in reality, this case is little different. Just as the direct payment of a debt "benefits" a guarantor by obviating his need to pay on the debt, the Tesoro and Quail West Payments "benefitted" the various investors in Ginn sur Mer by obviating their need to inject an equivalent amount of additional capital into that Development. FAC, ¶ 48; *cf. In re Int'l Mgt. Assocs., Inc.*, 399 F.3d at 1293 ("[T]here is no obvious violence to the language of the statute in stating that the benefit of a lucrative position, like the benefit experienced by a guarantor, may be considered, direct, ascertainable and quantifiable . . . .") (citing *In re B.S. Livingston & Co., Inc.*, 186 B.R. 841 (Bankr. D.N.J. 1995)).

### C. The First Amended Complaint Alleges Facts Establishing That Each Of The Defendants Was An Investor In Ginn Sur Mer, Either Directly Or Through Affiliated Entities They Controlled

Finally, the Defendants further assert that the First Amended Complaint in this proceeding "[does not] allege any facts directly connecting any of them to the Ginn sur Mer Development." Ginn Motion, p. 6; L.A. Motion, p. 4 n. 4. That assertion is, put charitably, disingenuous.

The First Amended Complaint contains detailed factual allegations establishing that "[e]ach of the named Defendants was an investor in the Ginn sur Mer Development, either directly or through other affiliated entities; and, accordingly, was an entity for whose benefit the transfers at issue were made within the meaning of 11 U.S.C. § 550(a)(1)." FAC, ¶¶ 20-27, 49.[3]

---

[3] The Ginn Defendants also assert in a footnote that, since their interest "was uniform across all Developments," they could not have "benefitted" from the shifting of funds to the Ginn sur Mer Development. Ginn Motion, p. 5 n. 5. We disagree. The First Amended Complaint alleges that the Defendants had already "written off" Tesoro and Quail West by the time that the Tesoro and Quail West Payments were made, and decided to shift said funds to Ginn sur Mer believing that Development had "the greatest potential for profit." FAC, ¶ 32, 39.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 · TELEPHONE (305) 789-3200

WHEREFORE, Trustee Dillworth respectfully requests that this Court enter an Order denying the Ginn and Lubert-Adler Defendants' Motions to Dismiss.

Dated: April 13, 2011

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.

Attorneys for Drew M. Dillworth,
Chapter 7 Trustee of the Tesoro Debtors' Estates
and the Quail West Debtors' Estates

Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone:  (305) 789-3200
Facsimile:   (305) 789-3395

I hereby certify that I am admitted to the Bar of
the United States District Court for the Southern District
of Florida and I am in compliance with the additional
qualifications to practice in this Court set forth in
Local Rule 2090-1(A).

By:   /s/  Harold D. Moorefield, Jr.
 EUGENE E. STEARNS
 Fla. Bar No. 149335
 estearns@stearnsweaver.com
 HAROLD D. MOOREFIELD, JR.
 Fla. Bar No. 239291
 hmoorefield@stearnsweaver.com
 MATTHEW W. BUTTRICK
 Fla. Bar No. 176028
 mbuttrick@stearnsweaver.com
 ANDREW E. STEARNS
 Fla. Bar No. 661651
 astearns@stearnsweaver.com

## CERTIFICATE OF SERVICE

I CERTIFY that on April 13, 2011, a true and correct copy of the foregoing was served as follows: (a) by courtesy E-Mail from undersigned counsel and by Notice of Electronic Filing ("NEF") generated by CM/ECF to those parties registered to receive NEF in this adversary proceeding; and (b) by courtesy E-Mail and U.S. Mail, postage prepaid, from undersigned counsel to those parties not registered to receive NEF in this adversary proceeding, as indicated on the attached Service List.

By: */s/ Harold D. Moorefield, Jr.*
HAROLD D. MOOREFIELD, JR.
hmoorefield@stearnsweaver.com
Counsel for Plaintiff

**SERVICE LIST**

**The following parties are registered to receive Notices of Electronic Filing ("NEF") in this adversary proceeding and were served by NEF through the Court's CM/ECF system and also by courtesy E-Mail from Plaintiff's counsel:**

PAUL STEVEN SINGERMAN, ESQ.
singerman@bergersingerman.com
efile@bergersingerman.com
*Counsel Ira M. Lubert; Dean S. Adler; Lubert-Adler Management Co., L.P.;*
*Lubert-Adler Group IV, L.P.; Lubert-Adler Real Estate Fund IV, L.P.;*
*Lubert-Adler Real Estate Parallel Fund IV, L.P.;* and *Lubert-Adler Capital Real Estate Fund IV,*
*L.P.* **("Lubert-Adler Defendants")**

LYNN F. CHANDLER, ESQ.
JONATHAN P. HEYL, ESQ.
JEFFREY P. MACHARG, ESQ.
lynn.chandler@smithmoorelaw.com
johanne.bloom@smithmoorelaw.com
devire.robinson@smithmoorelaw.com
jeff.macharg@smithmoorelaw.com
jon.heyl@smithmoorelaw.com
*Counsel for Edward R. Ginn III; Edward R. Ginn III Revocable Trust Dated Sept. 14, 2002;*
*ERG Management, LLC; ERG Enterprises, L.P.* **("Ginn Defendants")**

RONA J. ROSEN, ESQ.
rrosen@klehr.com
*Counsel for Lubert-Adler Defendants*

CHARLES W. THROCKMORTON, ESQ.
cwt@kttlaw.com
*Counsel for Ginn Defendants*

**The following parties are not registered to receive Notices of Electronic Filing in this adversary proceeding and were served by Plaintiff's counsel via First Class Mail (postage prepaid) and courtesy E-Mail:**

WILLIAM A. HARVEY, ESQ.
wharvey@klehr.com
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone:    (215) 568-6060
Facsimile:     (215) 568-6603
*Counsel for Lubert-Adler Defendants*

MICHEL O. WEISZ, ESQ.
mweisz@bergersingerman.com
**BERGER SINGERMAN, P.A.**
200 Biscayne Boulevard, Suite 1000
Miami, FL 33131
Telephone:    (305) 755-9500
Facsimile:     (305) 714-4340
*Counsel for Lubert-Adler Defendants*